LINDA R., Appellant-Respondent, v RICHARD E., Respondent-Appellant.

Second Department, October 1, 1990

## APPEARANCES OF COUNSEL

*Brownstein & Brownstein (Irwin Brownstein* of counsel), for appellant-respondent.

*Emanuel Baetich* for respondent-appellant.

*NOW Legal Defense and Education Fund (Sarah E. Burns, Lynn Hecht Schafran,* and *Latham & Watkins [Jennifer L. Adams, Christopher R. Plaut* and *Michael J. Ireland]* of counsel; *Sally F. Goldfarb* on the brief), *amicus curiae,* and for National Organization for Women of New York, *amicus curiae.*

## OPINION OF THE COURT

ROSENBLATT, J.

In this matrimonial action, the Supreme Court, after a trial, awarded the defendant husband custody of the parties' twin daughters, who are now nine years old. The plaintiff wife has appealed from this determination, claiming the proof at the trial established that she is the appropriate custodial parent, and that the court, in weighing the parental capabilities of the husband and wife, did not apply gender-neutral standards. For reasons which follow, we find that the custody determination lacks a sound and substantial basis in the record. Accordingly, we reverse it and award custody to the wife.

Domestic Relations Law § 240 (1) provides, in pertinent part, that the trial court's award of custody must be made as justice requires, "having regard to the circumstances of the case and of the respective parties and to the best interests of the child", noting that "[i]n all cases there shall be no prima facie right to the custody of the child in either parent." However, while "due deference must be accorded to the trial court, which has seen and evaluated the evidence first hand * * * [a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody determination to stand where it lack[ed] a sound and substantial basis in the record and, indeed, [was] contrary to the weight of the credible evidence" *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76). Upon our own authority to make a determination on the record before us, we conclude that the weight of the credible evidence supports an award of custody to the wife.

The parties were married in 1974. They met when the husband was attending medical school, and the wife was in

nursing school at the same facility. When they were married, the husband was preparing to enter his third year of medical school, while the wife had just received her B.S. degree in nursing.

Following the marriage, and until 1983, the wife (with one year off beginning in 1981 because of the birth of the parties' twin daughters) was employed as a nurse. Her salary served as substantial financial support for the family, at first exceeding the husband's earnings, until about 1984.

At trial, both the husband and wife stressed their respective roles in child rearing during the first year of the children's lives. The record establishes, however, that for the most part, the wife was not producing income at that time, but was at home with the children. The husband launched his private practice in pediatrics in 1982, and his income grew steadily thereafter. In 1983, the wife left her position as a nurse to take employment as a "nurse investigator" for a law firm, and had more flexible hours, such that her professional employment consumed only 3 or 4 days a week. By 1987, the husband was earning approximately $130,000 in a growing medical practice.

There is no foundation in the record for the trial court's conclusion that the wife "has been more or less a 'remote control' mother, having an interest in her children's welfare, but leaving the actual rearing, at this point in their lives, to the father and a housekeeper". Rather, the evidence presented indicates that the wife has participated substantially in the rearing of the children. Indeed, the record reveals that the wife's hours spent in pursuit of a career outside the home are decidedly fewer and more flexible than those spent by the husband, as recognized by the Supreme Court.

Moreover, we find no credible evidence to support the assertion that the wife has "extreme emotional problems affecting her ability to guide these children" or that her "history is one of leaving a therapist and discontinuing treatment as soon as she doesn't like what is being told to her by the therapist". The only basis for this belief is the testimony of an unlicensed "psychotherapist" who, at the time of trial, was treating both the husband and the parties' housekeeper. She had treated the wife three years earlier for four months, but had never interviewed the children. We find that the wife did not terminate treatment irresponsibly, but continued therapy with two licensed physicians. Their reports to the Nassau

County Probation Department indicated that her emotional condition had improved since she stopped seeing the psycho-therapist, and that her problems did not and would not affect her custodial capacity. Additionally, the Supreme Court failed to take into consideration that the husband also suffered from emotional problems necessitating treatment by the psycho-therapist. Its custody determination does not have the "firm expert confirmation" upon which it claims to have relied to justify the result *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 77, *supra).*

■ The court allowed extensive testimony, including some from a private investigator, regarding a relationship between the wife and "her lover", concluding that it disserved the children by disordering the wife's priorities. The evidence does not justify the Supreme Court's conclusion that the wife's alleged relationship with another man resulted in her absent-ing herself from the children "at a time when they [were] in great stress from the impending breakup of the marriage" and reflected the wife's "misplaced priorities and her somewhat less than selfless devotion". The evidence indicated that while the children were aware of the parties' problems, they were well adjusted emotionally and were not under undue stress or in need of psychotherapy. The wife's absences from the home were consistent with an arrangement by which the parties continued to live in the marital residence, but occupied sepa-rate bedrooms, and had informally agreed that each would have some time alone with the children. At no time were the children left without adult supervision. There is no credible proof that the wife's alleged relationship with another man affected the children in any significant way. Further, when the wife's attorney tried to question the housekeeper and cross-examine the husband about parallel activities on the husband's part, the court improperly found the questions objectionable.

In a custody dispute, the sexual behavior of a litigant is relevant, if, and to the extent, the children are thereby affected *(see, Matter of Blank v Blank,* 124 AD2d 1010; *Matter of McDonald v McDonald,* 94 AD2d 856). The courts have recognized that mothers and fathers should not, on the basis of gender alone, be held to different moral, behavioral, or sexual standards in evaluating their conduct vis-à-vis the children *(see, Matter of Feldman v Feldman,* 45 AD2d 320; *Commonwealth ex rel. Ackerman v Ackerman,* 204 Pa Super

403, 205 A2d 49; *Schoonover v Schoonover,* 228 NW2d 31 [Iowa]; *Dale v Dale,* 54 Ala App 505, 310 So 2d 225).[1]

■ In enacting the "best interests of the child" test, the Legislature expressly rejected the idea that either fatherhood or motherhood alone carries with it a superior right to custody *(see,* Domestic Relations Law §§ 70, 81, 240). The statutory declaration that there is "no prima facie right to the custody of the child" (Domestic Relations Law §§ 70, 240) rejects the notion that there is an inherent custodial preference for either parent *(Matter of Fountain v Fountain,* 83 AD2d 694, *affd* 55 NY2d 838; *Alan G. v Joan G.,* 104 AD2d 147, 152; *People ex rel. Moody v Moody,* 36 AD2d 627), while at the same time advancing equal protection concepts, and reducing invidious gender classifications and stereotyping of either sex.[2] While the role of gender in making custody determina-

1. *See,* Wadlington, *Sexual Relations After Separation or Divorce: The New Morality and the Old and New Divorce Laws,* 63 Va L Rev 249, 263-265 (1977); Lauerman, *Nonmarital Sexual Conduct and Child Custody,* 46 U Cin L Rev 647 (1977); Annotation, *Custodial Parent's Sexual Relations with Third Person as Justifying Modification of Child Custody Order,* 100 ALR3d 625; as for the increased gender neutralization with regard to spousal rights and responsibilities *see,* Hollinger, *Blest Be the Tie That Binds,* 81 Mich L Rev 1065 (1983) (reviewing Glendon, *The New Family and the New Property* [1981]); *see also,* Minow, *The Supreme Court 1986 Term—Foreword: Justice Engendered,* 101 Harv L Rev 10, 41 (1987).

2. *See, Reed v Reed,* 404 US 71 (unconstitutionality of Idaho statute which prefers males to females as estate administrators); *Price Waterhouse v Hopkins,* 490 US 228, 109 S Ct 1775 (holding that when a plaintiff in a case under 42 USC § 2000e *et seq.* proves that her gender played a motivating part in an employment decision, the employer may avoid liability only by establishing that it would have made the same decision, even if it had not taken plaintiff's gender into account); *Craig v Boren,* 429 US 190 (unconstitutionality of statute barring sale of 3.2% beer to males under 21 and females under 18); *Hishon v King & Spalding,* 467 US 69 (partnership offering denied to female, held violation of title VII [42 USC § 2000e *et seq.]*); *Orr v Orr,* 440 US 268 (unconstitutionality of statute by which only men may be ordered to pay alimony); *Newport News Shipbuilding & Dry Dock v Equal Employment Opportunity Commn.,* 462 US 669 (holding that pregnancy-related benefits provided to female employees must also be provided to male employees for the benefit of their spouses); *Califano v Goldfarb,* 430 US 199, and *Weinberger v Wiesenfeld,* 420 US 636 (removing gender criteria from requirements relating to availability of Social Security benefits); *Mississippi Univ. for Women v Hogan,* 458 US 718 (nursing school policy limiting its enrollment to women was unconstitutional); *Caban v Mohammed,* 441 US 380 (statute unconstitutional where it provided that an unmarried father's consent to the adoption of his children was not a legal necessity, and permitted an unmarried mother to withhold consent to unmarried father adopting children); *Frontiero v Richardson,* 411 US 677 (female Armed Forces member has right to claim spouse as dependent on equal footing with males).

tions has had a lengthy social and legal history, it finds no place in our current law.[3]

The need to employ gender-neutral precepts applies with equal force to the litigants' employment outside the home. In this regard, the Supreme Court's determination has been challenged on the wife's behalf on the ground that the Supreme Court imposed a more onerous parenting standard upon her. As evidence of the imposition of a more rigorous standard, our attention has been drawn to the following language in the opinion of the Supreme Court: "This court is fully cognizant of the role of the working mother in today's society, but as it has stated in *Shelton v Shelton,* NYLJ, 11/5/87, p. 15, col. 6: 'There is no question, on the other hand, that the mother, because of her needs in relation to her employment, does not devote full time to her son, but in this day and age, a woman is entitled to her own career so long as such pursuits do not result in neglect of the child.' "

Because the court reaffirmed the above-quoted language (which it had previously used in another case, *Shelton v Shelton,* NYLJ, Nov. 5, 1987, at 15, col 6, *supra),* but did not apply a corresponding standard to the husband, it is not free of the appearance of having imposed a more onerous burden on the wife.[4]

We stress that custody determinations must be born of gender-neutral precepts in both result and expression. We

---

**3.** Gender had long been the primary factor in awarding custody, beginning with ancient and common-law doctrine of absolute patriarchal control (Derdeyn, *Child Custody Contests in Historical Perspective,* 133 Am J Psychiatry 1369 [1976]), and shifting to a sense of parental guardianship (Grossberg, Governing the Hearth: Law and the Family in Nineteenth-Century America, at 283-284 [1985]; Basch, In the Eyes of the Law: Women, Marriage, and Property in Nineteenth-Century New York [1982]). As late as the nineteenth century, custody, at least after infancy, still generally went to the father *(Mercein v People ex rel. Barry,* 25 Wend 64; *People ex rel. Barry v Mercein,* 3 Hill 399). Slowly, this concept gave way to one in which custody of children of tender years was to go to the mother *(Osterhoudt v Osterhoudt,* 28 Misc 285, *affd* 48 App Div 74; *Ullman v Ullman,* 151 App Div 419), a doctrine to which some courts and commentators still subscribe (Klaff, *The Tender Years Doctrine: A Defense,* 70 Calif L Rev 335 [1982]; *see generally,* Annotation, *Modern Status of Maternal Preference Rule or Presumption in Child Custody Cases,* 70 ALR3d 262; R. K. Uviller, *Fathers' Rights and Feminism: The Maternal Presumption Revisited,* 1 Harv Women's LJ 107 [1978]; *cf., People ex rel. Watts v Watts,* 77 Misc 2d 178 [Kooper, J.]).

**4.** We note that in *Shelton v Shelton,* the Judge awarded custody to the wife.

know that for a variety of reasons, mothers as well as fathers of even young children are, or must be, gainfully employed. That being so, the custody-seeking mother who works outside the home should not be penalized for her employment, any more than should the father. To do so would often confront one parent—in this case the mother—with a Hobson's choice between livelihood and parenthood, while exacting a lesser standard on the other parent—in this case the father. If a mother is held to a more rigorous standard, the legislative presumption of gender-neutral custody determination, and with it, the "best interest of the child" test, is upset. In short, the wife, who is employed, should not thereby suffer in her chances for custody any more than should the husband, lest the wife feel compelled to give up her source of income and risk not only financial woe, but a court's finding that her former husband's stronger economic condition is more congenial to the child's best interests.[5]

Beyond equal protection considerations, this conclusion is compelled by a number of practical reasons, which have been expressed by Judges and commentators. In gauging maintenance awards, the courts and legislatures over the past decade have encouraged divorced spouses, particularly women, to acquire increased economic independence (see, O'Brien v O'Brien, 66 NY2d 576, 585). It would be incongruous, however, to exact a custody penalty as a price of compliance (see, Fitzsimmons v Fitzsimmons, 104 NM 420, 722 P2d 671). It has been pointed out that over 50% of mothers and almost 80% of divorced mothers are employed, and that custody determinations should not be based on any unfounded assumption that a "working mother" is a less satisfactory parent or any less fully committed to the care of the child than is a "working father" (see, Burchard v Garay, 42 Cal 3d 531, 229 Cal Rptr 800, 724 P2d 486; see also, Frontiero v Richardson, 411 US 677, 689, n 23; Gerber v Gerber, 337 Pa Super 580, 487 A2d 413; Williams, Deconstructing Gender, 87 Mich L Rev 797, 832; Annotation, Mother's Status as "Working Mother" as Factor in Awarding Child Custody, 62 ALR4th 259).

---

5. (See, Chambers, Rethinking the Substantive Rules for Custody Disputes in Divorce, 83 Mich L Rev 477, 539 [1984].) The increase in the number of gainfully employed women who became mothers, and the postdivorce financial consequences are discussed in Williams, Deconstructing Gender (87 Mich L Rev 797, 838 [1989]; see also, Kaye, Women Lawyers in Big Firms: A Study in Progress Toward Gender Equality, 57 Fordham L Rev 111, 116 [1988]).

■ The Supreme Court set forth no convincing reasons for discounting the court-requested psychiatric evaluation of all family members, as well as the evaluation by the Nassau County Probation Department recommending that the wife be granted custody of the children. Contrary to the Supreme Court's findings, the recommendation of these investigators— the only disinterested individuals who had examined both parties and the children—was based on a full exploration of the parties' lives and problems. In all, we conclude that the wife would better advance the emotional and intellectual development of the children in the long run, and that she would better promote familial harmony. The detailed evaluations by the licensed psychiatrist and the Probation Department indicate that while neither parent has been untroubled psychologically, neither appeared to have serious emotional problems. In addition, the disinterested experts concluded that the wife would be less likely to continue an ongoing competition with her former spouse or attempt to alienate the children from him. In contrast, these disinterested experts found that the husband, owing to his fierce competition for custody, was unable to acknowledge the wife's considerable contributions to the children, despite that she was home after school, has been their Brownie leader, and has had appreciable responsibilities for their care. They found that the husband's conscious or unconscious attempts to force the children to state a preference was suggestive of an ardent campaign to influence their choice.

We find no merit to the parties' challenges to the equitable distribution of the husband's medical practice. Further, we reject his claim that the Supreme Court failed to take into consideration certain credits and debits. The court's analysis and disposition of these issues was thoughtful and fair. There is no merit to the husband's claim that he should not pay the wife's attorneys' fees. We note, however, that the issue of the propriety of the amount of counsel fees and disbursements awarded to the wife's attorneys cannot be considered by this court because the affidavits in support and opposition have not been made part of the record on appeal.

We remit the matter to the Supreme Court, Nassau County, before a different Justice, for a new determination on the issues of visitation, child support and maintenance, as well as the occupancy and equitable distribution of the marital residence.

LAWRENCE, J. P., KUNZEMAN and MILLER, JJ., concur.

Ordered that the appeal from the order dated November 22, 1989 is dismissed, as no appeal lies from an order denying a motion to supplement and amend a memorandum decision; and it is further,

Ordered that the judgment is modified, on the law and the facts and as a matter of discretion, by (1) deleting the second decretal paragraph thereof which granted the defendant custody of the parties' infant children, and substituting therefor a provision awarding the plaintiff custody of the parties' children, (2) deleting the third decretal paragraph thereof concerning the plaintiff's visitation with the children, (3) deleting the fourth decretal paragraph thereof granting the plaintiff child support, (4) deleting the fifth decretal paragraph thereof directing the plaintiff to transfer title to the marital home to the defendant, (5) deleting the sixth decretal paragraph thereof awarding the defendant exclusive possession of the marital residence, and (6) deleting the seventh decretal paragraph thereof awarding the plaintiff a distributive share of the marital residence; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Nassau County, for a new trial to be had with all convenient speed before a different Justice on the issues of visitation, child support, and maintenance, as well as the occupancy and equitable distribution of the marital residence; and it is further,

Ordered that the plaintiff is awarded one bill of costs; and it is further,

Ordered that pending a new award of child support, the defendant shall continue to pay the plaintiff $130 per week child support.