# Eugene E. Gilbert v. Donna L. Gilbert

[664 A.2d 239]

Nos. 94-190 & 94-489

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 12, 1995

Motion for Reargument Denied June 13, 1995

*Thomas W. Costello* and *Joel T. Faxon* of *Thomas W. Costello, P.C.*, Brattleboro, for Plaintiff-Appellee.

*Gwendolyn W. Harris* of *Kiewel & Harris, P.C.*, Brattleboro, for Defendant-Appellant.

**Johnson, J.** Today, we rule that the family court erred in relying on the written report of a guardian ad litem (GAL) that contained personal judgments and conclusions by third parties not contained in the record, when such report was objected to by a party and not admitted pursuant to the rules of evidence. Accordingly, we reverse and remand the award of parental rights and responsibilities to the father. Defendant mother also appeals the denial of a subsequent motion to stay the transfer of custody pending appeal, in which the judge granted plaintiff attorney's fees for the motion. We affirm the denial of the motion, but reverse the award of attorney's fees.

## I.

The parties were married in 1982, and two years later their son, Gregory, was born. Plaintiff filed for divorce in February 1993. In response to a request by the parties, the court appointed a GAL for

Gregory. The guardian conducted extensive investigations and filed a detailed report six days before the hearing on the merits.

During the first day of the hearing, defendant objected to the admission of the guardian's report on the ground that it violated V.R.F.P. 7(d). In a written order, the court overruled defendant's objection and admitted the report because, at an earlier hearing on temporary matters, the parties had agreed to its submission, even though the report had not yet been written. After the hearing, the trial court awarded sole parental rights and responsibilities to plaintiff and granted defendant extensive parent-child contact. Defendant appeals, arguing that the court's decision relied inappropriately on the report filed by the guardian. We agree.[1]

■■ In a divorce action involving a child, the trial court must award parental rights and responsibilities to one parent when the parties cannot agree to divide or share these responsibilities or when the court determines that a parental agreement is not in the child's best interests. 15 V.S.A. §§ 665(a), 666(c). The award of parental rights and responsibilities must be based on the best interests of the child, reflecting a consideration of all relevant evidence, including the enumerated statutory factors. *Id.* § 665(b); *Harris v. Harris*, 149 Vt. 410, 412, 546 A.2d 208, 210 (1988). A proper decision requires a complete and balanced analysis, comparing the relevant attributes of each parent as they relate to the best interests of the child. See *Bissonette v. Gambrel*, 152 Vt. 67, 69, 564 A.2d 600, 601 (1989); *Harris*, 149 Vt. at 417, 546 A.2d at 213. Although the trial court has broad discretion in awarding parental rights and responsibilities, *Nickerson v. Nickerson*, 158 Vt. 85, 88, 605 A.2d 1331, 1333 (1992), it may not rest its decision entirely on improperly admitted evidence. See *Hathaway v. Ray's Motor Sales, Inc.*, 127 Vt. 279, 282, 247 A.2d 512, 514 (1968) (verdict supported only by evidence erroneously received cannot stand).

■ In a parental-rights-and-responsibilities case, the court may appoint a GAL for the child. 15 V.S.A. § 669; V.R.F.P. 7(c). The GAL's role is circumscribed by Rule 7(d). The proper role for the GAL in a divorce case is "to minimize the harm suffered by the child during the breakup of the family rather than to assist the attorney and the child

---

[1] Because we reverse on the basis of improper reliance on the GAL report, we do not reach defendant's remaining issues of gender bias, inappropriate consideration of a ten-year-old's desires, inadequate determination of primary-care-provider status, and improper denial of defendant's motion for continuance.

in making the choices that parties must make in our adversary system." Reporter's Notes, V.R.F.P. 7. The guardian is "an independent parental advisor and advocate whose goal shall be to safeguard the child's best interest." V.R.F.P. 7(d). In essence, the guardian acts as a buffer between the child and the adversarial nature of our judicial process.

Rule 7(d) contemplates that the guardian must develop a full understanding of the issues to be able to inform the child about all of the proceedings. To do so, the rule provides that the guardian shall review all relevant court documents and meet with the child's attorney, if the child has one. Once the guardian is familiar with the issues, the guardian can inform the child as to the options presented to the court. *Id.* If the child has an attorney, the guardian is to assist the attorney in advising the child about these options. *Id.*

The guardian's role at the merits hearings is limited. The rule provides that the guardian shall not testify unless the testimony is "directly probative of the child's best interest, and no other persons could be employed or subpoenaed to testify on the same subject matter." *Id.* If the guardian does become a witness, the court may, in its discretion, appoint a new guardian. *Id.* The rule does provide for the guardian to state a position to the court, but it imposes an important restriction on the making of such statement: the guardian's position must be based on the evidence in the record. If the child has a position, either the guardian or the child's attorney should state that position. *Id.* Finally, the guardian may not be relied upon for parental evaluations or home studies. Reporter's Notes, V.R.F.P. 7(d); cf. V.R.F.P. 5(a) (court may order party evaluation or home study).

The rule also contemplates that the guardian may prepare a written report and submit it to the parties. V.R.F.P. 7(d). The scope of this report is not limited; nevertheless, as mentioned above, a guardian should not be asked to include parental evaluations or home studies in the report. Reporter's Notes, V.R.F.P. 7(d). After the report has been reviewed by the parties, it may be submitted to the court only if both parties agree or pursuant to the rules of evidence. *Id.*

In this case, the guardian's report should not have been submitted to the court, and reliance on the report was an abuse of the court's discretion.

## A.

As an initial matter, we consider plaintiff's argument that we should not address the issue of the guardian's report because no proper objection was made to its admission.

■ Plaintiff argues that defendant's objection was not sufficiently specific. V.R.E. 103(a)(1). Plaintiff claims defendant's objection was based only on the lack of an agreement as to its submission. In the beginning of the hearing, however, defendant objected to admission of the report. In support of her objection, defense counsel quoted at length from Rule 7(d) and from the Reporter's Notes. She then argued that regardless of any prior agreement, admission of the report would violate "the spirit of the Rule." Thus, she clearly indicated that she objected to admission of the report regardless of what the parties had agreed to earlier. Defendant's objection gave the judge sufficient notice that she objected to admission of the report on the grounds that it violated both the purpose and the substance of Rule 7(d).

## B.

■ Plaintiff claims that any objection was waived because the parties agreed, at the preliminary hearing, to admit the forthcoming report into evidence. We conclude, however, that such an agreement can be binding only after the parties have had an opportunity to review the report.

While the rule is not clear about the proper sequence, it states that the report must be submitted to the parties, and a certificate of service upon the parties must be filed with the court. V.R.F.P. 7(d). Then, the rule states that a report shall be submitted to the court only by agreement of the parties or pursuant to the rules of evidence. *Id.* The sequence in the rule implies that the agreement may be reached only after the report has been submitted to the parties. See Reporter's Notes, V.R.F.P. 7(d) (filing of GAL report with court "permissible only after submission to the parties" and only by their agreement "or pursuant to the rules of evidence").

■■ This interpretation is consistent with the purpose of the guardian's report — a neutral party's view of the child's best interests. The report may incorporate a wide variety of information that may or may not be deemed sufficiently trustworthy to be admissible in a court of law. To prevent the court from considering

potentially untrustworthy evidence, a binding agreement to submit the guardian's report can be made only after the parties have had an opportunity to evaluate its contents. Then, the parties may agree to admit part or all of the report. Only after the parties have agreed to submit the report may the court consider the substance of the report without complying with the formal rules of evidence. The agreement provision in Rule 7(d) is an exception to the rules of evidence and should be interpreted in such a way as to encourage fair and impartial decisions based on trustworthy evidence.[2]

 Because the agreement in this case was made before the report was submitted to the parties, it is not a binding agreement. Lacking a binding agreement between the parties or a formal admission pursuant to the rules of evidence, the court should not have considered the guardian's report.

## C.

If we could be sure that the GAL's report, although considered in violation of the rule, played no role in the court's decision, we would not reverse. Indeed, plaintiff claims that consideration of the report was not essential to the decision because all of the information in the guardian's report was also present in the evidence on the record. It is true that many of the representations made by the guardian were later put into evidence, but this misses the point of what went wrong at trial.

 A careful review of the record demonstrates that the guardian's report significantly influenced the presentation of evidence. In

---

[2] The dissent's analogy to blood tests and polygraphs is misleading and incorrect. Unlike the objective results of those tests, the GAL's report is based on subjective conclusions, dependent to a great extent on the quality and training of that individual.

In Vermont, GALs are volunteers. There are no specific qualifications necessary for appointment, and GAL training is inconsistent among the courts. Their work is performed without supervision, and there is no review of the factors that they consider in recommending custody. When GALs were surveyed by the Gender Bias Task Force about the attitudes they bring to their work, the task force found that (1) there is a significant amount of gender bias among the GALs surveyed; (2) in custody cases, many GALs are not following applicable law in formulating their recommendations and are considering impermissible factors; and (3) judges rely heavily upon the recommendations of guardians. Vermont Supreme Court & Vermont Bar Ass'n, *Gender and Justice: Report of the Vermont Task Force on Gender Bias in the Legal System*, 199-200 (1991).

fact, the report defined the factual issues to be examined. The report, issued six days before the hearing, placed one party in the position of using the hearing to corroborate the facts and conclusions given in the report, while the other party was left to refute them. The attorneys made reference to it throughout the hearings. Over the course of two days of hearings, most of the witnesses were asked whether they had met with the guardian, and there were no fewer than twenty-five separate references to the guardian's involvement in the case.

Father's attorney used the hearings to validate the legitimacy of the guardian's report by showing that the mother had sufficient access to the guardian and that she was aware of the guardian's role in the case. Each time the attorney questioned the mother, he began by establishing that she had had sufficient opportunities to meet with the guardian. He asked her about their meetings. He asked her whether she had instructed the guardian to visit with anyone else or whether she had given the guardian any documents to look at. He also asked her whether she had told the guardian about her desires for Gregory's care.

Further, father's attorney tried to ensure that the mother was aware of the guardian's critical role in this case. He asked her whether she knew that the guardian was there as a neutral party for Gregory. After establishing that Gregory wanted his voice to be heard, he asked her if she knew that Gregory depended on the guardian to express his voice. The constant implication of the questioning was to validate the guardian's investigation as comprehensive and neutral.

The guardian's conclusions were also used to challenge the mother's substantive testimony. For example, the father's attorney confronted the mother about her disagreement with the guardian's conclusions that, by favoring work over home, she had an imbalance in her life. He asked the mother about her disagreement with the guardian's conclusion that she had used inappropriate discipline. He also challenged the mother's allegations of the father's drinking and physical abuse of Gregory because she had not discussed these concerns with the guardian. In other words, the GAL report was the standard for all of the facts that could or should be found in the case, as well as the conclusions to be drawn from those facts.

The use of the report in this manner placed the mother in an unfair position. She was asked to defend herself against the GAL's conclusions under procedural rules in which the GAL does not become a live witness, is not subject to cross-examination, and is

cloaked with neutrality by being independently appointed by the court. See V.R.F.P. 7(d). Here the reality was quite different. The GAL's conclusions were based on facts found by the GAL that were outside the record, and in some cases those facts were hearsay to the GAL and were double or triple hearsay when reported. While we recognize the broad right to cross-examine and to use prior inconsistent statements or admissions to impeach, it would be difficult to conclude, on this record, that the guardian's report had no effect on the credibility of the witnesses.

Aside from the report, the court also invited the guardian to actively participate in the hearings. At the end of the first merits hearing, the court sought and followed the guardian's advice on whether Gregory should take a trip with his mother. At the end of the last hearing, the court asked the guardian if she wanted to advise the court. After the guardian commented on some of the evidence and advised the court to include in its order long-term therapy for both parents, she recalled her last meeting with Gregory.

> The last comment I wanted to make was that I did meet . . . with Gregory again on Sunday. He asked to see me personally alone. Which we did in my home. And I was very troubled . . . to learn and although it would appear that the relationship — the communication between mother and child is improving, I believe, to an extent it is, . . . there was a comment made by the mother to the child regarding the fact . . . the marriage wasn't working anyway. . . . [A]nd the child was very upset that again, it seemed that it was Greg's fault that the marriage didn't work. . . . So that created more turmoil and he had a great deal of anxiety in my home.

This was the last comment made to the court, again detailing facts outside the record. Because the court solicited the active participation of the guardian, it is difficult to conclude that the guardian and her report did not significantly influence the outcome in this case.

As noted above, the critical question is whether the court relied on the GAL's report in reaching its conclusion about Gregory's care. We conclude that there is both express and implied reliance on the report. Express reliance may be found in the court's statements to the guardian, in which the court appeared to take the position that the guardian's role was to act as the child's spokesperson in court,

introducing any evidence that would otherwise be admitted through the child. Such a role is inconsistent with the limits established in Rule 7(d), and its acceptance by the court demonstrates that the court thought it proper to rely significantly on the guardian and her report.

Moreover, the findings of fact include several specific references to the guardian's report that were adopted by the court. One finding states that Greg desires to live with his father and that Greg had explained this desire to the guardian. The court also noted that the guardian had met with other members of the parties' families. The next finding states: "The Guardian's report of October 24, 1993 reflects Greg's choice of custodial parent as thoughtful, consistent and repeated by him to most of the important persons in his life." These findings rely directly on the report and it is apparent that the court relied on them in its conclusion, stating that Greg "is of sufficient maturity and age to elect with whom he shall live and by virtue of the Guardian's support, that will be honored in this case."

■ With respect to implicit reliance, we conclude that the entire hearing was so shaped by the conclusions in the GAL's report that we cannot affirm the court's decision. The references to the report throughout the trial and the court's acceptance of the guardian's expansive role indicate that the admission of the report had a substantial impact on the hearings. Because it is impossible to separate the testimony in the record from the improperly admitted report, we conclude that the evidence was so tainted by the improperly admitted report that there was insufficient reliable evidence upon which to base any conclusions.

We make no judgment as to the proper custodian for Gregory in this case; we merely hold that the significant impact of improper evidence deprived the court of the ability to make a fair and impartial decision.

## II.

After the court awarded sole parental rights and responsibilities to plaintiff, defendant filed a motion for stay, attempting to maintain her status as Gregory's custodial parent pending the appeal of the court's order. Defendant claimed she would succeed on appeal because the order was prejudiced by the court's gender bias. The court responded, upon its own initiative, that the motion for stay was sanctionable under V.R.C.P. 11 because the gender-bias claim was without support in law or fact. The court denied the motion for stay and granted plaintiff attorney's fees.

Defendant appeals the denial of the motion for stay, arguing that the court applied the wrong standard and that the court abused its discretion by (1) delaying the hearing by four months, (2) denying defendant's motion to strike the appellate briefs from the record, (3) addressing the issue of sanctions against trial counsel during the hearing on the motion for stay, and (4) awarding plaintiff attorney's fees.[3]

 To prevail on a motion for stay, the moving party must demonstrate: (1) a strong likelihood of success on the merits; (2) irreparable injury if the stay is not granted; (3) the stay will not substantially harm other parties; and (4) the stay will serve the best interests of the public. *In re Insurance Servs. Office, Inc.*, 148 Vt. 634, 635, 537 A.2d 134, 134 (1987) (mem.); *In re Allied Power & Light Co.*, 132 Vt. 554, 556, 326 A.2d 160, 162 (1974). The trial court has discretion in granting or denying a motion for stay pending appeal. V.R.F.P. 12(a), (d). Discretionary rulings by the trial court will not be disturbed unless an abuse of discretion is clearly shown. *Vermont Nat'l Bank v. Clark*, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991).

 Defendant first argues that the trial court applied the wrong standard. We disagree. The court, relying on *Bergstrom v. Bergstrom*, 271 N.W.2d 546, 548 (N.D. 1978), established the following four criteria: (1) a strong showing that the appellant is likely to succeed on appeal; (2) unless the stay is granted, the appellant will suffer irreparable injury; (3) no substantial harm will come to any party by reason of the issuance of the stay; and (4) granting the stay will do no harm to the public interests. These four factors are exactly the same as those required in Vermont. See *In re Insurance Servs. Office, Inc.*, 148 Vt. at 635, 537 A.2d at 134. Therefore, while the court relied on a case from a different jurisdiction, it applied the correct standard.

 Defendant also argues that the court abused its discretion by delaying the hearing for four months, denying her request to strike the appellate briefs from the record, and addressing the issue

---

[3] We recognize that it appears inconsistent to rule on a motion for stay after the appeal has been decided. We proceed in this manner because defendant elected to file a full appeal of the motion below, rather than a motion as provided under V.R.A.P. 8(a). Because we reverse the award of parental rights and responsibilities to plaintiff, the motion for stay is not considered moot. The mother still has a legally cognizable interest in the outcome because a reversal of the denial of the motion would give her full parental rights and responsibilities immediately. See *Doria v. University of Vermont*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991) (case becomes moot when parties lack legally cognizable interest in the outcome).

of sanctions against trial counsel during the hearing on the motion for stay. We conclude that the court did not abuse its discretion. The court should have held a hearing on the motion to stay before four months had elapsed; however, defendant did not ask for an expedited hearing, thus preventing the trial court from addressing defendant's concerns first. The trial court's consideration of the briefs is also not error. While certainly not necessary, the briefs were relevant to the first prong of the standard to be applied to the motion for stay. Finally, while it may have been preferable to hold a separate hearing on the Rule 11 violations, the court's conduct was not so egregious as to rise to the level of an abuse of discretion.

Defendant's final argument is that the court abused its discretion in awarding plaintiff attorney's fees. Generally, attorney's fees are awarded only in exceptional cases. *Cameron v. Burke*, 153 Vt. 565, 576, 572 A.2d 1361, 1367 (1990). They may be awarded for violations of V.R.C.P. 11, or they may be awarded when justice so requires where a litigant acts in bad faith, vexatiously or unreasonably obstinate or obdurate. *Id.* We will not reverse the award of attorney's fees unless there has been an abuse of discretion. See *State v. Delaney*, 157 Vt. 247, 256, 598 A.2d 138, 143 (1991) (refusing to reverse Rule 11 sanctions absent an abuse of discretion).

■ The trial court made the Rule 11 motion upon its own initiative, and the purported violation was discussed at the hearing. Although we might draw the inference that fees were imposed for what the court viewed as a Rule 11 violation, the court's order neither concludes that Rule 11 was violated nor gives any indication as to why sanctions were imposed. In fact, with regard to any Rule 11 violation, the court's order recognizes that defense counsel, in a supplemental memorandum, cited provisions of 15 V.S.A. § 665(c) as legal support for her claim of gender bias. Without findings by the trial court that defendant violated Rule 11, or acted in bad faith or vexatiously in filing the motion for stay, the trial court's order cannot be upheld. Accordingly, we reverse the award of attorney's fees.

*Award of parental rights and responsibilities reversed and remanded. Denial of motion for stay affirmed; award of attorney's fees reversed.*

**Morse, J.,** dissenting. The guardian ad litem's written report was properly admitted in evidence by agreement of the parties under

V.R.F.P. 7(d); therefore, I dissent.[1] It is undisputed that at the temporary hearing the parties agreed to the trial court's admission of the written report. This Court holds, however, that "such an agreement can be binding only after the parties have had an opportunity to review the report." This holding is neither supported by the language of Rule 7 nor workable as a practical matter. After today, only in the most rare of cases — when the report favors both parties equally — will a GAL's report be submitted to the family court under Rule 7(d). See Reporter's Notes, V.R.F.P. 7(d) (as general rule, reports from guardians will be submitted only if parties agree to their submission).

As the Court concedes, Rule 7(d) does not set forth any time frame for the parties to stipulate to admission of a GAL's report. In support of its conclusion that there can be no binding stipulation to admission of a report until the parties have had an opportunity to review it, the Court can only note that the sentence in Rule 7(d) allowing GAL reports to be submitted to the court by agreement of the parties follows the sentence requiring that guardians submit their reports to the parties.[2] The mere location of these two sentences cannot be parlayed into a prohibition on parties stipulating to admission of reports before reviewing them. Had such a result been intended, it no doubt would have been stated.

The Court cannot point to, and I have not found, any case law suggesting that parties may not stipulate to the admission of evidence not yet gathered or prepared. Indeed, courts find such stipulations to be binding, even when the evidence would otherwise be inadmissible. See, e.g., *Blake v. Division of Child Support Enforcement*, 525 A.2d 154, 158 (Del. 1987) (upholding stipulation to admission of future

---

[1] I would affirm the Windham Family Court's judgment on all issues; however, I see no purpose in addressing the issues not considered in the Court's opinion. Regarding the issue of attorney's fees, I would hold that the wife has failed to show that the court abused its discretion in awarding the husband attorney's fees with respect to her motion to stay. See *Milligan v. Milligan*, 158 Vt. 436, 444, 613 A.2d 1281, 1286 (1992) (trial court may award attorney's fees in divorce case at its discretion).

[2] The Court also cites to the Reporter's Notes to V.R.F.P. 7(d) as authority for the proposition that reports may be submitted to the court only if both parties agree after reviewing them. The Reporter's Notes provide:

> The rule does contemplate the filing of reports by guardians ad litem. This is permissible only after submission to the parties and only by agreement of the parties . . . . Thus, as a general rule, reports from guardians will be submitted only if the parties agree to submission.

These notes suggest only that the GAL must not file the reports with the court ex parte, not that the parties must review the report before agreeing to file it with the court.

blood-test results in paternity action); *Sauzer-Johnsen v. Sauzer*, 544 N.E.2d 564, 569 (Ind. Ct. App. 1989) (upholding stipulation to admission of future polygraph results in divorce case); *Moore v. Richard West Farms, Inc.*, 437 S.E.2d 529, 531 (N.C. Ct. App. 1993) (upholding stipulation requiring parties to adhere to results of survey done by independent court-appointed surveyor). Here, the parties contemplated that the family court would see and consider the GAL's report, whomever it favored.

By providing the GAL with incentives not to write a report favorable to either party, the Court's holding undermines the GAL's primary role, as stated in Rule 7(d) — to "act as an independent parental advisor and advocate whose goal shall be to safeguard the child's best interest." When we limit the GAL's opportunity to form opinions and communicate with the court, we limit the GAL's ability to safeguard the child's best interests. By the same token, we limit the family court's ability to become aware of and protect the children's best interests — its primary objective when determining parental rights and responsibilities. The family court here acted wisely in allowing the parties to make practical use of the GAL.

In my view, it is preferable that the parties' agreement concerning the scope of the GAL's written report be established *before* the GAL begins to contact persons in connection with the case. Here, for example, with the knowledge and consent of the parties, the GAL interviewed many people and filed a detailed report six days before the hearing on the merits. Nevertheless, the GAL was ultimately not permitted to testify or to submit her report into evidence. If the fruits of a GAL's labor are not to be shared with the family court, it doesn't make sense to waste the GAL's time. The parties in a divorce action, who often may not have the resources to pay for an independent family evaluation, should be allowed to agree to the admission of a GAL's report before reviewing its contents. Such an agreement would not preclude the parties from challenging the accuracy of the report or the trustworthiness of its author at the final hearing. See *Sisson v. State*, 353 S.E.2d 836, 839 (Ga. Ct. App. 1987) (party's stipulation to admission of testimony or evidence does not preclude that party from contesting accuracy of testimony or evidence; admissibility does not equate to incontestability).

The Court nevertheless finds its interpretation of Rule 7(d) consistent with the rule's policy of acquiring "a neutral party's view of the child's best interests" because the information in the report may not be "neutral," and therefore not "sufficiently trustworthy to be

admissible in a court of law." This approach throws the baby out with the bath water. The cure for this potential problem is not to grant either party a veto power over admission of a preapproved report regardless of the merits of the opposing party's objections, but rather to provide the opposing party with an opportunity to refute the report's contents.

Permitting the mother to back out of her agreement serves no just purpose. Fairness was preserved because both parties agreed to the procedure, knowing they were taking a chance on the results of the GAL's investigation. Permitting a party to renege merely because she was not favored in the report is hardly a principled holding of this Court. Cf. *Cullin v. State*, 565 P.2d 445, 457 (Wyo. 1977) (because accused who stipulated to admission of polygraph test results would undoubtedly have relied on results if they had been positive, it would be unreasonable to allow him to defeat introduction merely because results were unfavorable); cf. *State v. Unterseher*, 255 N.W.2d 882, 888 (N.D. 1977) (rejecting argument that blood-test results in paternity actions are admissible pursuant to stipulation only if results are negative).

In fairness, some blame must be cast upon the rule that generated the issue on appeal. Rule 7(d), an apparent compromise resulting from the opposing views of members of the Family Court Rules Advisory Committee, is a rule at war with itself. Indeed, Rule 7(d) is the proverbial committee version of a horse — a two-humped camel containing provisions diametrically opposed to one another.

Many of the rule's provisions leave the unmistakable impression that the GAL is to take an active role in court proceedings to protect the child's best interests. Toward this end, the GAL is required to act as an "independent parental advisor and advocate," reviewing "all options which may be presented to the court" and assisting the child's attorney "in advising the child regarding those options." V.R.F.P. 7(d). Further, the GAL is required to state a "position" to the court, presumably the GAL's opinion on the ultimate issue. *Id.*

Oddly, though the GAL's mandate is to act as an advisor and advocate to protect the child's best interests, the GAL's reasons given on the record for her "position" may not be based on anything outside the record, and the GAL may not testify unless such testimony is necessary. Thus, the GAL's opinion on custodial issues may not be probed based on her contact with the child and other persons outside the courtroom. Further, today this Court holds that, even if the parties consent to have the GAL file a written report concerning

parental rights and responsibilities, that report may not be filed unless the parties agree once again to its admission after they have had a chance to see if the report is favorable to their desires. Thus, for all practical purposes, the GAL is now frustrated from investigating the child's situation and filing a written report. Ironically, these limitations, whether expressly contained in the rule or read into the rule by this Court, prevent the GAL from fulfilling the rule's stated mandate to protect the child's best interest.

It appears that two viewpoints surfaced within the Family Court Rules Committee — one opposed to the GAL's role in divorce cases and one in favor of it. Those opposed to the GAL's role sought to limit the allowable bases for the GAL's position and to discourage the GAL from testifying. Apparently, they believe that guardians are not to be trusted to assist the family court in making custodial decisions. Only "experts" should fulfill that role. This point is addressed somewhat obliquely in the Reporter's Notes to Rule 7:

> In matters governed by this rule, state-employed social workers rarely become involved. Impartial parental evaluations and home studies are difficult to come by. Despite their apparent availability, guardians ad litem should not be asked to perform these functions. Instead, an expert evaluation or home study may be ordered pursuant to Rule 5.

Thus, while the rule itself does not preclude guardians from performing home studies, the reporter suggests that guardians are disfavored to do them because of the restrictions on the guardians testifying. Yet, the Reporter's Notes to V.R.F.P. 5 explicitly provide that the performance of home studies[3] is not limited to "experts":

> The qualifications of the person selected to perform the home study need not include formal education in family matters, nor certification as a mental health professional or physician. Practical experience or nonacademic training may suffice.

Once again, we see the clash of viewpoints regarding the scope of the role of guardians ad litem and the confusion that has resulted.

---

[3] A "home study" is defined in the Reporter's Notes to V.R.F.P. 5(a), as follows:

> Home studies may include investigation of the surroundings of the children, their age, educational needs, health, habits and history, and the character, parenting skills and parental experience of the adults involved in a family court proceeding, as well as any other matter which the court deems relevant to its determinations.

If these rules are read narrowly to restrict the GAL's role, the family court is left without an impartial investigation and evaluation from a neutral person in divorce cases where the parties cannot afford to hire experts. Historically, the GAL program in divorce cases was meant to fill that void, at least, until Rule 7(d) was promulgated. If Rule 7(d) is construed to so limit the use of guardians, the quality of most divorces involving custodial decisions will suffer. Unless the parties can afford, or the state wishes, to finance evaluations and "home studies" by experts, a rigid application of Rule 7(d) will leave the family court with nothing to rely on in making custody determinations except the partisan presentations of the parties, who unfortunately are too often more interested in getting their way than fostering their children's best interests.

I dissent. I am authorized to say that Chief Justice Allen joins the dissent.