STATE OF VERMONT

ENVIRONMENTAL COURT

Secretary, Vermont
Agency of Natural
Resources, Plaintiff,                    }
                                         }
                                         }
                                         }   Docket No. 40-3-99
                                         }   Vtec
v                                        }
                                         }
                                         }
Lyndonville Savings Bank                 }
& Trust Co., Respondent.

Decision and Order on Pending Motions

On February 5, 1999, the Secretary of the Vermont Agency of Natural
Resources (ANR) issued an administrative order (the 1999
Administrative Order) pursuant to 10 V.S.A. ' 8008 regarding
Respondent's[1] logging activities in Bolton in 1997, under the so-called
A heavy cutting@ law. The order imposed a monetary penalty and did
not contain any other provisions. Respondent requested a hearing in
Environmental Court. Respondent is represented by Philip H. White,
Esq.; the Secretary of the Agency of Natural Resources is now
represented by Conrad W. Smith, Assistant Attorney General.

The administrative order as originally issued asserted that Respondent
had conducted a heavy cut on 64 +/- acres. After discovery had
proceeded, and shortly before the first scheduled date of trial in
September, 1999, the Secretary was given leave to amend the
administrative order to assert that the heavy cut had taken place on A
40 acres or more.@ The first full day of the hearing on the merits was
held on September 22, 1999.

At the hearing on September 22, 1999, Respondent filed a written
motion for sanctions under V.R.C.P. 11, asserting that the state could
not prove that Respondent had conducted a heavy cut on more than
40 acres, due to the deficiencies in the methodology used by the state
forestry district manager who investigated the site in the late summer
of 1997. Respondent sent a copy of the motion for Rule 11 sanctions
to the Secretary no earlier[2] than September 21. The Court= s ruling on
the Rule 11 motion was reserved until after the decision on the merits
of the case.

During the September 22 hearing, evidence was presented on the site inspection survey or Acruise@ of a portion of the cut area done by the state forestry district manager. The Secretary did not finish putting on the witness= testimony. Rather, during voir dire regarding several successive plots of the cruise area on a computer-generated map of the cut area, various discrepancies were presented comparing the scale of the underlying maps to the scale of the cruise area. The September 22 hearing day concluded with the Court= s directive that the Secretary arrange for the computer file of the base map of the cut area to be retrieved and printed, that a one-inch scale line be physically drawn on that new printout, and that the cruise area be plotted again on the new computer-generated base map. Respondent= s expert witness or witnesses were present on the date of the September 22 hearing, but their testimony was not reached.

The next trial date had been scheduled for the morning of September 30, but it was canceled on September 27, and hearing dates were rescheduled for October 12, 19 and 25.

After the task of re-plotting the cruise area on the computer-generated base map had been completed, on October 7 the Secretary moved to dismiss the proceeding in this Court, under V.R.C.P. 41(a)(2), and moved to withdraw or A reverse@ the underlying administrative order without prejudice, that is, without its standing as a resolution of the merits of the administrative order in Respondent= s favor. By fax on October 8, followed by the original filed on October 12, Respondent filed its opposition to the Secretary= s motion to dismiss and moved for judgment in favor of Respondent. Respondent requested reimbursement for its costs, expenses and attorney= s fees, either as terms and conditions of the dismissal order, or under Rule 11, and the parties briefed the then-pending motions.

By written order dated November 17, 1999, the Court allowed the Secretary to dismiss the underlying administrative order, but required that the dismissal be with prejudice to filing a further administrative order on the same underlying cutting event from 1997. The Court= s November 1999 Dismissal Order noted that if the hearing on the merits had concluded, and if the Secretary had failed to prove a violation due to the calculation methodology or any other reason, the Court would have been required by 10 V.S.A. ' 8012(b)(1) to reverse the administrative order. That is, regardless of whether the Rule 41(b)(2) dismissal was with or without prejudice to the Secretary= s filing a future administrative order regarding the same asserted 1997 violation, the effect of the dismissal was necessarily that the asserted

violation was not proved and that the 1999 Administrative Order must be reversed. The November 1999 Dismissal Order discussed that the pending Rule 11 motion would survive the dismissal, and that if Respondent should wish to file an independent action for malicious prosecution or its civil equivalent, such an action would also survive the dismissal and, indeed, would have had to have awaited the resolution of the underlying case before it could have been filed in any event.

The Secretary then moved for reconsideration of the November 1999 Dismissal Order, arguing that as the Secretary= s dismissal was voluntary under Rule 41(a)(2), the Court should have given the Secretary the opportunity to accept the proposed conditions of dismissal, including whether dismissal would be with prejudice, or to decide to withdraw the proposed dismissal and go forward with the case. The Secretary also moved to strike or summarily deny Respondent= s Rule 11 motions, due to lack of compliance with the procedural requirements of Rule 11 as amended in 1996. Respondent has renewed its motions for attorney= s fees, expert fees and costs. The Court allowed the parties to undertake discovery on the circumstances underlying Respondent= s motions for sanctions, and to file extensive supplemental memos on their motions.

The Present Motions:

Two of the Secretary= s motions are before the Court: the motion for reconsideration of the November 1999 Dismissal Order, and the motion to strike or summarily deny the Rule 11 motion. Respondent continues to seek reimbursement for its expert witness fees, other costs, and attorney= s fees, now on four theories, which have been presented in various combinations in Respondent= s memoranda: as a sanction under Rule 11; to it as the prevailing party under the Cameron > bad faith= exception to the American Rule that each party bears its own litigation expenses; as a discovery sanction; and as a condition of allowing the Rule 41(a)(2) dismissal. In discussing these motions, we will distinguish as necessary between attorney= s fees and other expenses, such as expert witness fees.

Respondent= s motions for sanctions describe in detail a course of conduct on the part of the ANR with respect to Mr. Kenneth Davis, suggesting that the Secretary= s motivation for the initial filing of the Administrative Order in this case went beyond considerations of the alleged violation itself. However, sanctions available to a court under any of Respondent= s theories are available only to vindicate the

authority of the court, either though applicable court rules or through the inherent power of the court to address the conduct of the litigants and attorneys in litigation before it. Pre-litigation conduct may be considered only as it may demonstrate a motive for or circumstantial evidence of sanctionable conduct during the litigation. Consequently, at the outset we must note that if Respondent or Mr. Davis has a cause of action for malicious prosecution or its civil equivalent, based on the two years of conduct leading up to the filing of this administrative order detailed in the motion memoranda and attachments, such a cause of action would be beyond the jurisdiction of the Environmental Court. Accordingly, the present decision and order makes no determination on this issue.

Rule 11

Rule 11 sanctions may be applied to pleadings, written motions or other papers presented to the Court in litigation if the filing is presented for any improper purpose; if the legal contentions are not warranted by existing law (or an extension of the law); if the factual contentions lack evidentiary support; or if denials of factual contentions lack evidentiary support. As a court rule of civil procedure, Rule 11 only applies to conduct of the attorneys or parties during the litigation, and not to conduct leading up to the litigation. The Court= s consideration of Rule 11 sanctions in the present case was initiated by Respondent= s motion in the present case.

Under the Uniform Environmental Enforcement Act, 10 V.S.A. Chapter 201, the Secretary has authority to take several administrative actions which may never come to court, including to issue an administrative order. If no hearing is requested on an administrative order, it simply becomes final. After it has become final, if a respondent does not comply with it, the Secretary may file a complaint under 10 V.S.A. ' 8014 to enforce the final administrative order. If a respondent does request a hearing, the administrative order is brought before the court and becomes a de novo proceeding in Environmental Court. In the present case, the litigation subject to Rule 11 did not commence until the Respondent= s filing of the Notice of Request for Hearing (and other related motions) on March 16, 1999.

Vermont Rule of Civil Procedure 11, as amended in 1996 (adopting the 1993 amendments to the equivalent federal rule), provides what is referred to as a A safe harbor@ provision. The party seeking Rule 11 sanctions must make the request separately from other motions or requests, must describe the specific conduct alleged to warrant the

sanctions and must serve the motion on the opposing party in question. The opposing party has 21 days to react to the motion. The motion may not even be presented to or considered by the court unless A the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[3]" within that 21-day period[4]. The Vermont Supreme Court has emphasized that this > safe harbor= period must be provided. <u>Bennington Realty, LLC v. Jard Company, Inc., et al.</u>, 169 Vt. 538-39 (1999).

In the present case, the motion for Rule 11 sanctions was filed with the Court on September 22, 1999. The Secretary moved to dismiss the underlying administrative order on October 7, 1999, well within the 21 day safe harbor period. There is no requirement in Rule 11 that a voluntary dismissal be taken with prejudice, in order to satisfy Rule 11's requirement that the challenged paper or allegation be withdrawn.

Moreover, the Rule 11 motion is required to describe the specific conduct alleged to warrant the sanctions, whether by signing, filing, submitting, or later advocating any court-filed document. It has been difficult for the Court to determine which documents filed in Environmental Court are alleged to have violated Rule 11, as Respondent has focused on a course of conduct stretching back to the original investigation in the fall of 1997. Even if the actions of Agency personnel prior to the Secretary= s issuance of the administrative order, and the timing or motives of the Secretary in issuing the administrative order, were objectionable or even reprehensible in and of themselves, they simply cannot form the basis of Rule 11 sanctions, as they do not constitute representations to the court covered by Rule 11(b). Most of the actions described in Respondent= s memoranda do not qualify as A signing, filing, submitting, or later advocating@ any pleadings, written motions, or other papers filed in court, regardless of when those actions occurred. When considerations of the pre-litigation course of conduct are stripped away, Respondent essentially argues that the Secretary= s attorney should have known at an earlier point than the first day of trial that the allegations of the amended administrative order lacked sufficient evidentiary support to allow the Secretary to proceed.

After an interlocutory appeal and a related Superior Court case were disposed of, the first document filed by the Secretary was the required pre-trial memorandum, filed on May 26, 1999. Respondent moved in limine on June 10, 1999 to challenge the calculation methodology; the Secretary filed a motion in opposition, arguing that the methodology should be ruled on at trial. Respondent also moved on June 10, 1999

to compel the Secretary to produce its expert; the Secretary responded that no expert had then been selected and that the expert would be disclosed as soon as selected. The Secretary= s expert, Mr. Carlton Newton, was disclosed on August 18, 1999, a month before the trial. Respondent moved on June 21, 1999 to compel the production of documents and worksheets pertaining to Mr. Charles Vile= s measurement methodology as used during the July 1997 cruise; the Secretary= s attorney responded that he had asked his clients for the documents and that no documents were available. Respondent thereupon moved to take the deposition of Mr. Vile on September 3, 1999, which required permission of the Court under the rules applicable to proceedings under the Uniform Environmental Enforcement Act. The Court granted that motion and ruled on other pending motions at a telephone hearing recorded on audio tape on September 16, 1999.

None of the documents filed or later advocated during the four months of pre-trial proceedings in this case, from the secretary= s pre-trial memorandum to the first day of trial, was presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Certainly if the Secretary had more promptly retained an expert witness, the flaws in the methodology used to conduct and to plot the 1997 cruise could have been discovered or exposed prior to the first day of trial, and thereby could have saved the Secretary, Respondent, and the Court the expenses related to that first day of trial. However, Rule 11 only governs the filing of signed documents with the Court. The Secretary= s response to Respondent= s Motion in Limine, and the Secretary= s response to the Motion to Compel, were not filed for any improper purpose. Nor were the legal contentions in any documents unwarranted by existing law or a nonfrivolous legal argument. Until the thorough scrutiny of the calculation and plotting methodology during the first day of trial, the Secretary had reason to believe, from the work of Agency personnel, that the allegations of the amended administrative order had evidentiary support.

Accordingly, Respondent= s motion for attorney= s fees and costs, including expert witness fees, on the basis of V.R.C.P. 11 is DENIED.

<u>Attorney= s fees under the Cameron exception to the American Rule</u>

Respondent argues that this is the type of A exceptional case@ in which attorney= s fees should be paid under Vermont= s exception to the American Rule. See <u>Lakeview Farm, Inc. v. Enman</u>, 166 Vt. 158,

164-165 (1997), citing <u>Cameron v. Burke</u>, 153 Vt. 565 (1990); <u>In re Gadhue</u>, 149 Vt. 322, 327-28. Attorney= s fees may be warranted under the rule in <u>Cameron</u> and the analogous federal jurisprudence if conduct in this litigation meets the standard of bad faith, vexatious or A unreasonably obdurate or obstinate@ conduct.

Before determining whether the Agency= s conduct in this case meets that standard, the first obstacle to applying this doctrine is that if attorney= s fees were unavailable under Rule 11 due to the A safe harbor@ provision, the <u>Cameron</u> exception cannot be applied to A defeat the safe-harbor provision of Rule 11, added to the rule subsequent to Cameron, by invoking the same residual powers of equity and justice that form the basis of the rule and its requirements.@ <u>Bennington Realty, LLC v. Jard Company, Inc., et al.</u>, 169 Vt. 538, 539 (1999)

Moreover, even if not precluded by the reasoning in <u>Bennington Realty</u>, this case does not meet the standard in <u>Cameron</u> that the litigant was forced to seek judicial assistance to secure a clearly defined and established right which should have been freely enjoyed without judicial intervention. That is, the <u>Cameron</u> exception is available only when the litigant has had to engage in a second round of litigation to vindicate its rights. In the present case, even if the Secretary failed to recognize early enough that the Agency= s scientific method was faulty, Respondent has only had to engage in the first round of litigation.

Accordingly, Respondent= s motion for attorney= s fees and costs, including expert witness fees, on the basis of the exception to the American Rule is DENIED.

<u>Attorney= s Fees as a Discovery Sanction</u>

Respondent also argues that attorney= s fees are warranted as a discovery sanction. Monetary sanctions are only available in discovery disputes after the Court has issued an order to compel discovery, and that order has not been complied with. V.R.C.P. 37(b). That is not the circumstance of this case.

Accordingly, Respondent= s motion for attorney= s fees and costs, including expert witness fees, as a discovery sanction is DENIED.

<u>Secretary= s Motion for Reconsideration</u>

One of the Secretary= s arguments in opposition to the costs and attorney= s fees sought by Respondent is that the November 1999 Dismissal Order was granted with prejudice. A dismissal without prejudice would have allowed the refiling of the administrative order. The dismissal with prejudice precluded a subsequent administrative order from being issued against Respondent for the 1997 Bolton timber harvest. Whether dismissal is with or without prejudice, under Rule 41(a)(2) if dismissal is granted, the court has discretion to impose such terms and conditions, including any fees or costs, as it deems proper in the interests of justice and to protect the legitimate interests of both parties, 5 Moore's Federal Practice & 41.05[1]. The factors the Court should consider in formulating the terms and conditions include the plaintiff= s diligence in moving to dismiss, any A undue vexatiousness@ on the part of the plaintiff, the extent to which the action has progressed, including defendant= s trial preparation expenses, the duplicative expenses of a second litigation, and the adequacy of plaintiff= s explanation of the need for the dismissal.

When dismissal is with prejudice, so that there cannot be a subsequent prosecution, attorney= s fees are generally not warranted, as they would not have been available under the American Rule if Respondent had prevailed on the merits. If dismissal were without prejudice, the Court would need to consider the risk and duplication of expenses that might be incurred in a second litigation. Curiously, despite this reliance on the A with-prejudice@ dismissal, the Secretary has moved the Court to reconsider its November 1999 Dismissal Order, to give the Secretary the opportunity to determine whether to accept a A with prejudice@ condition, or other possible conditions of dismissal, or to proceed with the underlying administrative order.

The Secretary is correct that, rather than unilaterally imposing dismissal with prejudice, under Rule 41(a)(2) jurisprudence the Court should have stated the conditions it would impose on dismissal, and should have allowed the Secretary to choose whether to go forward with dismissal on those terms, or to proceed with the merits hearing on the administrative order. Accordingly, the Secretary= s Motion for Reconsideration is GRANTED. The Court will proceed to present the conditions of dismissal, and to provide the Secretary the opportunity to determine whether to accept those conditions.

In determining initially to dismiss with prejudice, the Court considered that the dismissal motion was filed after six months of trial preparation, after pretrial motions had been briefed and addressed and after the first day of trial; that the Secretary had determined[5] that the

methods used to perform the most current calculations of the asserted heavy cut area were unreliable; and that although the Secretary had requested dismissal without prejudice, the Secretary had no plan or intent to relitigate[6] Respondent= s alleged violation stemming from the 1997 Bolton timber harvest. Accordingly, the Court in the November 1999 Dismissal Order determined that the litigation had progressed sufficiently that it would be unfair to leave the possibility of a refiled administrative order hanging over Respondent.

Respondent now requests that the Court impose the requested attorney= s fees and costs as a condition of the Rule 41(a)(2) dismissal. However, a court may impose attorney= s fees or other costs as a term and condition of a Rule 41(a)(2) dismissal only if attorney= s fees can be independently supported, that is, if attorney= s fees are provided for by statute, or warranted under Rule 11, or if the circumstances of the case warrant an exception to the American Rule. In the present case, we have already determined that attorney= s fees cannot be independently supported. We will therefore examine whether expert witness fees and other costs of preparing for and attending trial should be imposed as a condition of dismissal.

The conditions are based on the considerations in the original dismissal order, and on the fact that if the Secretary had more promptly retained and disclosed the Agency= s expert witness, the flaws in the methodology used to conduct and to plot the 1997 cruise could have been discovered or exposed prior to the first day of trial, and thereby could have saved the Secretary, Respondent, and the Court the trial preparation expenses related to the depositions of Mr. Vile and of the Secretary= s expert, as well as that first day of trial. Further, if the matter is refiled, Respondent will face the duplication of the expenses related to the first day of trial and the deposition of the Secretary= s expert. Accordingly, the Secretary= s Motion to Dismiss the administrative order will be granted on the following alternative terms and conditions, necessary to do justice and protect the interests of both parties. On or before February 7, 2001, the Secretary shall file with the Court its choice among these alternatives, or shall state whether the Agency intends to proceed with the hearing[7] on the merits of the administrative order.

Alternative I - The proceedings in this Court will be dismissed with prejudice, with the parties to bear their own costs, except that the Secretary shall reimburse Respondent for Respondent= s expert witness fees for the September 22, 1999 day of hearing, as that hearing day would not have been necessary if the Secretary had

thoroughly reviewed the methodology and had dismissed before the start of trial.

Alternative II - The proceedings in this Court will be dismissed without prejudice, with the Secretary reimbursing Respondent for Respondent= s expert witness fees in trial preparation for the depositions of that witness, if one was held, of the Secretary= s expert witnesses and of Mr. Vile, and for the September 22, 1999 day of hearing, as that preparation would not have been necessary if Secretary had thoroughly reviewed the methodology and had dismissed before the start of trial, and those expenditures would necessarily have to be repeated if the proceedings are refiled.

Done at Barre, Vermont, this 22nd day of January, 2001

_____
Merideth Wright
Environmental Judge

---

## Footnotes

1. At all times during these proceedings the Respondent has been the Lyndonville Savings Bank and Trust Co., which had contracted with Kenneth Davis for the logging work at issue in this proceeding. The Secretary was aware of an indemnification agreement between Mr. Davis and the Bank making Mr. Davis responsible for the defense of this proceeding.

2. In its memorandum filed November 30, 1999, Respondent refers to this motion as having been 'properly served' on the Secretary 21 days prior to its having been filed in Court, but no proof of service or later reference to this service has been made by Respondent in the face of the Secretary's argument that the Rule 11 motion was first sent to the Secretary on September 21, 1999. Accordingly, the Court must use September 22, 1999 as the date of service on the Secretary in the absence of any other evidence to the contrary. We note that the

Secretary was aware before that date, at least from the discovery disputes in the summer, that Respondent took issue with the cruise methodology and the methodology for calculation of the cut area.

3. This requirement may be inapplicable when a Rule 11 motion is filed post-judgment, as there is no remaining opportunity to correct or withdraw the challenged paper, but such was not the situation when the motion was first filed in the present case.

4. Similarly, Rule 11(c)(1)(B) provides a procedure for the court on its own motion to enter an order posing the equivalent of a Rule 11 motion, describing the offending conduct and directing the attorney or party to show cause why Rule 11(b) has not been violated. However, monetary sanctions may not be imposed on the court's initiative unless the order to show cause is issued prior to the voluntary dismissal.

5. Secretary's memorandum filed October 27, 1999, at p. 2.

6. Secretary's memorandum filed October 27, 1999, at p. 10.

7. We reiterate, however, as we stated in the November 1999 Dismissal Order, that it does not make sense to force a party which has the burden of proof to proceed with a hearing which it has stated its intention not to pursue. Agency of Natural Resources v. Mountain Valley Marketing, Inc., Docket No. E90-007 (Vt. Envtl. Ct., June 19, 1991). A trial "with an unwilling plaintiff, even if it could be enforced, would be an expensive luxury." Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964).