# Peter Q. Harris v. Bonnie L. Harris

[546 A.2d 208]

No. 87-210

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed March 11, 1988

*Jeremy Dworkin*, South Londonderry, for Plaintiff-Appellee.

*Cheney, Brock & Saudek, P.C.*, Montpelier, and *Susan L. Boyle* of *Bech and Associates*, Hartland, for Defendant-Appellant.

**Dooley, J.** The main issue in this divorce proceeding is whether the father [plaintiff] or mother [defendant] of the three minor children of the marriage — two boys, ages 8 and 10 at the time of the trial court order and one girl, age 3 at that time — will be awarded custody.[1] The trial court awarded custody to the plaintiff with liberal visitation to the defendant. The defendant appeals, raising a scattershot of objections to the custody award, with the primary focus placed on whether the trial court findings and order are consistent with our new child custody statute — 15 V.S.A. § 665(b). In addition, the defendant alleges that the trial court improperly failed to consider a partial stipulation between the parties and did not fully divide the property of the parties. We reverse and remand on the custody and property issues.

The plaintiff in this case is a psychiatrist who now practices on a hospital staff in Massachusetts. He resided in the family home in Thetford, Vermont, up until April, 1984 — and temporarily in 1986 during an attempt at reconciliation. The defendant continues to reside at the Thetford home where she raises sheep, earning only a small amount from that venture. She is a teacher by profession but has not taught school since the parties first came to Vermont in the early 1970's.

The parties adopted a relatively traditional division of responsibilities. The defendant did not work outside of the home, at least until she began raising sheep as a business, and was primarily responsible for care of the children, cooking and cleaning. At various stages of his career, the husband worked long hours. He also did a lot of work around the home, including each year taking a week off from work to cut and split wood for the winter. He spent much of his free time with his family.

During the early 1980's, the marriage developed major strains. Plaintiff commenced an affair with another woman. Defendant's discovery of the affair led to a separation, which despite attempts at reconciliation became permanent.

By the time of the divorce hearing, the parties had agreed to share legal responsibility for the children but strongly disputed custody. Based on the evidence, the defendant's position was that: she was the primary custodian, she was a fit and loving parent, the children were developing well in her custody, and a

---

[1] The father brought the original divorce action and the mother counterclaimed. The divorce was awarded to the mother.

change of custody would not be in the best interest of the children. She also pointed out that the plaintiff's infidelity broke up the marriage and that he had physically abused her in the past.

Based on his evidence, the primary claims of the plaintiff were: defendant was inadequate as a wife and mother; she abused alcohol, left the children unattended, failed to provide proper meals and medical care to the children and encouraged the children to lie to the plaintiff; and the defendant had taken in a 17-year-old lover who was a poor role model for the children. Plaintiff offered general statements of his capacity to meet the needs of the children.

Following the hearing, both parties filed extensive requests for findings. Approximately two weeks after the hearing, the parties filed a pretrial stipulation that detailed their agreement on sharing legal responsibility and required that disputes arising out of this joint responsibility would go to arbitration.

Thereafter the court filed extensive findings and conclusions, awarding custody of all three children to the plaintiff and giving defendant liberal visitation rights. The order also dealt with rehabilitative maintenance and division of the real property but did not divide the personal property of the parties. The findings did not specifically rule on the requests filed by the parties. The court did not refer to the partial stipulation or adopt any of its terms in its order.

In attacking the custody award, the defendant makes five major claims: (1) the findings are not sufficient to comply with 15 V.S.A. § 665(b); (2) the court misapplied some of the criteria in § 665(b) and failed to apply others; (3) the findings are insufficient to demonstrate the reasons for the court's conclusions; (4) certain key findings are unsupported by the evidence; (5) the custody award is against the clear weight of the evidence. We consider the first two of these issues and, in view of the disposition of the second, do not reach the remainder.

■ The first issue relates to the requirements of 15 V.S.A. § 665(b). This statute, adopted in 1986 and effective for this case, requires the court to determine custody in "the best interests of the child" and to "consider" at least eight statutorily listed factors. The defendant argues that the trial court was required by the statute to make specific findings on each of the factors and failed to do so.

We addressed the obligation of the court to make findings on the statutory custody factors in *Poulin* v. *Upham*, 149 Vt. 24, 538 A.2d 181 (1987). There, we stated:

> Thus, 15 V.S.A. § 665(b) directs that a court must consider, at a minimum, eight specific factors when making a determination of parental rights and responsibilities.* Consequently, in order for a trial judge to state in its written findings, pursuant to V.R.C.P. 52(a), the facts essential to the disposition of parental rights and responsibilities, the trial court must at least address each of these statutorily created factors.
>
> ---
>
> \* In the instant case the court had sufficient evidence before it to make findings as to each of these factors. We note, however, that if no evidence is presented as to a particular factor, no findings need be made with respect to it.

*Id.* at 26, 538 A.2d at 182. See also *Price* v. *Price*, 149 Vt. 118, 123-24, 541 A.2d 79, 83 (1987) (where parties put in evidence relating to a statutory factor, court must make findings and conclusions on the issue; decided under prior statutory law).

Defendant urges in this case that we require "specific findings on pertinent criteria" in a format that groups findings under the criteria and shows clearly how the court weighed each factor. Citing cases from other states, defendant argues that clear compliance with the statute must be shown if we are to enforce the legislative mandate that custody decisions be determined in the best interests of the child.

We have reviewed carefully the decisions from other states, particularly those that have adopted variations of § 402 of the Uniform Marriage and Divorce Act, which was a partial model for our statute. See 9A Uniform Laws Annotated 156, 561 (Master ed. 1987). None of the states have gone further than *Poulin* in requiring consideration of the statutory factors. See, e.g., *In re Dickman*, 670 P.2d 20, 22 (Colo. App. 1983); *In re Slavenas*, 139 Ill. App. 3d 581, 585, 487 N.E.2d 739, 741 (1985); *Stafford* v. *Stafford*, 618 S.W.2d 578, 580-81 (Ky. Ct. App. 1981); *MacCormick* v. *MacCormick*, 513 A.2d 266, 268 (Me. 1986); *Rosenfeld* v. *Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171-72 (1976); *In re Cole*, 729 P.2d 1276, 1279 (Mont. 1986); *In re Croley*, 91 Wash. 2d 288, 292, 588 P.2d 738, 741 (1978). In fact, the most common standard

used in the cases is that the record must show that statutory factors were considered but there is no requirement of specific findings on each factor. See, e.g., *MacCormick* v. *MacCormick*, 513 A.2d at 268 ("We do not expect . . . detailed findings on each factor," only " 'some indication in the record that the [judge] considered those factors . . . .' ") (quoting *Cyr* v. *Cyr*, 432 A.2d 793, 797 (Me. 1981)); *In re Croley*, 91 Wash. 2d at 292, 588 P.2d at 741 ("Where . . . the record indicates substantial evidence was presented on the statutory factors thus making them available for consideration by the trial court and for review by an appellate court, specific findings are not required on each factor."). The best exposition of trial court responsibility to address statutory factors appears in *Rosenfeld* v. *Rosenfeld*, 311 Minn. at 83, 249 N.W.2d at 171-72. The court stressed the benefits of findings on the statutory factors to assure consideration of the factors, facilitate appellate review and satisfy the parties that the case was fully and fairly evaluated. However, it declined to require specific findings on each factor:

> We do not hold that the trial court must make a specific finding on each of the statutory factors, nor do we hold that each factor must be specifically addressed by the trial court. It is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in reaching its decision.

*Id.* We adopt the *Rosenfeld* statement as a further explanation of our holding in *Poulin*.

When judged by the above standard, it is clear that the findings are sufficient in this case. The trial court cited to the relevant statutory sections and made extensive findings that show consideration of the statutory factors. While we agree with defendant that it would be preferable for the trial court to structure its findings and conclusions to show the findings relevant to each factor together with a conclusion as to each factor, we are unwilling to require this specific form. The statute requires only that the trial court "consider" each factor — it imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions.

■ Defendant's second issue is a more difficult one. Defendant alleges that the trial court failed to fully implement the statute, 15 V.S.A. § 665(b), as intended by the legislature. Although

she has numerous overlapping arguments, two are at the center of her position: the court gave inappropriate consideration to the defendant's male companion; and the custody order is based on factors for which there is no information about the effect of plaintiff's custody.

The first claim must be viewed in light of two sections of the statute. 15 V.S.A. § 665(b)(7) requires the court to consider "the relationship of the child with any other person who may significantly affect the child." However, 15 V.S.A. § 667(a) provides that "[e]vidence of conduct of a parent not related to the factors in section 665 of this title shall only be admissible for the purposes of determining parental rights and responsibilities if it is shown that the conduct affects the parent's relationship with the child." Defendant asserts that the evidence of her relationship with a young man fits within § 667(a), particularly because the evidence disclosed that the man no longer lived with defendant at the time of trial.[2]

We find that § 667(a) does not apply in this case for two major reasons. First, based on the evidence in the case, it is clear that the man was present in the home enough so that the court could find him to be a person "who may significantly affect the child."[3] Since the relationship is relevant under § 665(b)(7), evidence of its presence is admissible under § 667(a).

Second, § 667(a) is an evidence statute which makes certain evidence inadmissible. Under V.R.E. 103(a)(1), defendant must object to the admission of the evidence at trial in order to raise the error here. Defendant failed to make any objection.

---

[2] This claim was hotly contested, and plaintiff hired a private investigator to determine whether defendant's companion continued to live at defendant's home. Although much of the investigator's evidence was ruled inadmissible, there was sufficient evidence for the court to conclude that the man still lived with defendant, and the court did so conclude.

[3] 15 V.S.A. § 665(b)(7) is based on § 402(3) of the Uniform Marriage and Divorce Act. The official comment on § 402(3) and a provision similar in part to 15 V.S.A. § 667(a) indicates that the intent is to discourage parties from spying "on each other in order to discover marital (most commonly, sexual) misconduct" because "unless a contestant is able to prove that the parent's behavior in fact affects his relationship to the child (a standard which could seldom be met if the parent's behavior has been circumspect or unknown to the child), evidence of such behavior is irrelevant." See 9A Uniform Laws Annotated 561 (comment to § 402 of the Uniform Marriage and Divorce Act). The difference between this case and the type of case described in the comment is that here the trial court found that the man was living with the children.

Even if § 667(a) does not specifically apply, the overall intent of the statutes, in defendant's view, is to prohibit consideration of sexual conduct evidence unless there is a clear showing of effect on the children. We have some concern about defendant's ability to make this argument in view of the fact that plaintiff offered an expert witness on this point but was refused by the trial judge who ruled it was a matter of common sense on which expert testimony would not be helpful. See V.R.E. 702 (expert testimony admissible where it "will assist the trier of fact to understand the evidence . . . ."). The defendant did not at the time indicate that expert testimony was required.

While the expert testimony would have been helpful in this case, we agree with the trial court that the evidence fell in an area where the court could evaluate it without expert testimony. Such evaluation was expected under the language of § 665(b)(7). We concur with the Supreme Court of Kentucky which, facing a similar statute and similar evidence, said:

> A trial judge has a broad discretion in determining what is in the best interests of children when he makes a determination as to custody. In many instances he will be able to draw upon his own common sense, his experience in life, and the common experience of mankind and be able to reach a reasoned judgment concerning the likelihood that certain conduct or environment will adversely affect children. It does not take a child psychologist or a social worker to recognize that exposure of children to neglect or abuse in many forms is likely to affect them adversely. Many kinds of neglect or abuse or exposure to unwholesome environment speak for themselves, and the proof of the neglect or abuse or exposure is in itself sufficient to permit a conclusion that its continuation would adversely affect children.
>
> We also think the trial court is not precluded from consideration of circumstances where the neglect, abuse, or environment has not yet adversely affected the children but which, in his discretion, will adversely affect them if permitted to continue. In other words, a judge is not required to wait until the children have already been harmed before he can give consideration to the conduct causing the harm.

*Krug* v. *Krug*, 647 S.W.2d 790, 793 (Ky. 1983). Accordingly, we hold that the trial court did not err in accepting the evidence and relying on it in the custody determination.

■  The second claim raises what may be a significant gap between the intent behind the custody statute and its implementation. The statute can direct the trial court in what it must consider but does not direct the parties in what they must submit. While there was some child-oriented focus to the evidence in this case, the parties engaged in the all too familiar battle that bore more on the marital fault of the parties than the best interest of the children. The plaintiff, in particular, adopted the overall strategy of attacking the custodial fitness of the defendant while providing only general statements of how his position as custodian would relate to the statutory factors. The defendant defended her fitness but offered almost no evidence about the fitness of the plaintiff. The nucleus of the defendant's position is that the failure of the plaintiff to offer detailed, specific evidence of how an award of custody to him will affect the children under each of the statutory factors means that the defendant must prevail. The case is made more difficult by the fact that the court accepted most of the plaintiff's position and awarded custody to him.

As we stated in *Poulin*, the trial court was not required to address factors not covered in the evidence. *Poulin*, 149 Vt. at 26 n.*, 538 A.2d at 182 n.*. The difference in this case is that there was evidence on each of the statutory factors, but it related to only one of the parents.

The use of the custody statute, based on the presentation of the parties, was one-sided to the point that the award cannot be affirmed consistent with the statute. The custody statute clearly requires a more balanced and complete analysis. Almost all the factors begin with some variation of the words "the ability and disposition of each parent to." For example, § 665(b)(3) requires consideration of the ability and disposition of each parent to meet the child's present and future developmental needs. It does not meet the statute for one parent to offer evidence of how she has met and will meet the child's developmental needs, while the other parent's evidence solely goes to negating the first parent's evidence. Depending upon whom the fact-finder believes, he will find the first parent is good or bad on this factor but will have no basis to compare the second parent's actual or expected perform-

ance. In this case, the court could not make any comparison on most of the factors. Thus, it was error to find against the defendant on these factors in awarding custody to plaintiff.

Two other considerations support this result. Our holding is that a parent cannot claim the benefit of a statutory factor solely by showing that the other parent's actual or expected performance with respect to that factor is inadequate. This requires each parent to show his or her relationship with the child in light of the statutory factors. To some degree, it will direct the evidence away from the spousal misconduct focus that too often pervades custody hearings and onto the needs of the child.

The result will also enable the court to look carefully at the desirability and impact of changing the primary custodian. Section 665(b)(6) requires the court to look at "the quality of the child's relationship with the primary care provider, if appropriate given the child's age and development." Unlike most of the other factors, this one does not involve a comparison between parents. It directs the court to give some weight to continuation of the primary custodian with the weight to be determined by the quality of the relationship.

Defendant has argued that we should adopt a rule that the primary custodian will be awarded custody as long as the parent is fit. Some courts have adopted such a rule even where a statute is in force which sets forth factors to use in determining custody. See, e.g., *Pikula* v. *Pikula*, 374 N.W.2d 705, 713 (Minn. 1985). We believe that such a presumption would be inconsistent with the statutory scheme as it is presently written. The statute requires the court to "consider" each factor, a duty that would not be fulfilled in a case involving two "fit" parents if custody were determined solely on the basis of which was the primary custodian. We do agree, however, that this factor should be entitled to great weight unless the primary custodian is unfit.[4] The exact weight

---

[4] We note that in the recently issued opinion in *Peckham* v. *Peckham*, 149 Vt. 388, 389, 543 A.2d 267, 268 (1988), this Court stated that 15 V.S.A. § 652 — the predecessor statute to 15 V.S.A. § 665 — did "not specifically require the [trial] court to give special weight to the fact that one party has acted as the primary caretaker of the child." The instant opinion is not at odds with *Peckham*. The statutory scheme in *Peckham* was suggestive, unlike the mandatory language of the current § 665. Even so, the *Peckham* decision stressed that "the significance of primary caretaking must not be underemphasized when determining the best interest of the child." *Id.* at 389, 543 A.2d at 268. In *Peckham* other factors weighed heavily against a custody award to the parent who had been the pri-

cannot be determined unless there is evidence of the likely effect of the change of custodian on the child. In the absence of such evidence, the court should ordinarily find that the child should remain with the primary custodian if that parent is fit.

In view of our disposition of the statutory issue, we need not reach the other issues raised by the defendant with respect to custody. Because the custody determination must be reversed and remanded, the trial court must also reconsider the support award which is based on the custody determination.

■ Defendant raises two issues not concerned with the custody of the children of the marriage. She asserts that the failure of the trial court to consider and address a stipulation of the parties was error. Second, she asserts that the trial court failed to award the personal property of the parties.

The stipulation in issue was filed almost two weeks after the hearing on the merits in the case. The stipulation specified that the court could incorporate into its final order certain terms relating to legal responsibility for the children. Under the stipulation, legal responsibility was to be shared and certain methods, including mediation, were to be used to resolve any conflicts in sharing legal responsibility. The order of the court, filed some four months later, did not mention the stipulation or incorporate any of its terms.

The situation here is similar to that in *Plante* v. *Plante*, 148 Vt. 234, 531 A.2d 926 (1987). There, the parties put in their requests for findings a joint statement that showed they had reached agreement on custody. The Court held that the trial court was not bound by the agreement but must give notice to the parties if it intends to reject the agreement so that the parties can make meaningful evidentiary presentations on the issues covered by the stipulation. *Id.* at 236, 531 A.2d at 927. The opinion is not clear on whether the agreement in *Plante* was communicated to the court prior to the hearing on the merits.[5] Certainly, it is less dis-

---

mary caretaker. Specifically, the trial judge in *Peckham* assessed the fitness of the primary caretaker in that case and determined that the best interests of the child dictated a custody award to the other parent. Thus, *Peckham* is consistent with our observation, here, that "this factor should be entitled to great weight unless the primary custodian is unfit."

[5] A review of the record in *Plante* indicates that the agreement was discussed with the court off the record during the hearing on the merits. Following the hearing, the parties indicated their agreement in their requests to find. This

ruptive for the parties to communicate any stipulation to the court prior to the hearing on the merits.

We have a strong policy in favor of voluntary settlement of contested custody matters. In fact, the applicable statute allows the courts to award parental rights and responsibilities only "[w]hen the parents cannot agree to divide or share parental rights and responsibilities," 15 V.S.A. § 665(a); or when an agreement is found to be not in the best interests of the child or not reached voluntarily, 15 V.S.A. § 666(c). Consistent with the statutory responsibility, the *Plante* rule should apply whether or not the stipulation is filed before the hearing on the merits as long as it precedes the decision. Thus, the court in this case could reject the stipulation only if it gave notice of its intention to the parties and gave them an opportunity to present evidence on the issues covered in the settlement. On remand, the court must either incorporate the stipulation into its order or hold an evidentiary hearing on the issues covered by the stipulation.

■ Plaintiff seeks to avoid this result by arguing that 15 V.S.A. § 666(b) requires that a stipulation be "a complete agreement on parental rights and responsibilities" in order to be presumed to be in the best interest of the child under § 666(a). We must construe the statute in light of its plain meaning as well as the policies behind it. Plaintiff's argument fails from both perspectives. Section 666(a) establishes a presumption of validity in "*[a]ny agreement* . . . which divides or shares parental rights and responsibilities," (emphasis added), and is not limited to complete agreements as plaintiff suggests. Moreover, there is no policy reason to distinguish between partial and "complete" agreements. Finally, the statute's treatment of presumptions cannot be read to affect the *Plante* rule, which is actually one of procedure. For these reasons, we reject plaintiff's argument.

■ The last issue deals with the disposition of the property of the parties. The trial court found the value of the real property of the parties and made an award. Despite receiving evidence on the issue, the court failed to address the personal property of the parties. The evidence indicates that the value of this property is significant. Accordingly, the court has failed to make a critical find-

Court referred to those requests because they were part of the record before the court. Thus, technically *Plante* deals with a stipulation communicated to the court after the hearing on the merits.

ing bearing on the property disposition. See *Sullivan* v. *Sullivan*, 147 Vt. 407, 409, 518 A.2d 33, 34 (1986). We must, therefore, reverse the property disposition order and remand for reconsideration.

*Reversed and remanded as to custody of the minor children of the parties, legal responsibility for the children, support and division of property.*