## Richard Brennan v. Cheryl Brennan

[685 A.2d 1104]

No. 95-653

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 4, 1996

Motion for Reargument Denied October 24, 1996

---

*Andrew D. Mikell* of *Mikell & Hartsuff,* Burlington, for Plaintiff-Appellee.

*D. Michael Mathes* of *Conley & Foote,* Middlebury, for Defendant-Appellant.

**Allen, C.J.** The mother of a minor child appeals from an order of the Addison Family Court awarding custody of the child to the father. We reverse.

The parties married in 1986 and have one child, Cody, who was three and a half years old at the time of the final hearing in November 1995. Following the separation of the parties, the child lived with the mother in the marital home, and the court found that she was the primary caregiver. Both parties have present relationships. According to the court, the father's girlfriend, who attended the hearing, "seems quite clearly attached to Cody."

In findings central to its decision, the court focused on the daily schedules of the parents. The mother, who is employed in an unskilled position and works from 6:00 a.m. to 2:30 p.m., takes Cody to the day care provider by 5:15, while he is still sleeping. Cody usually awakens around 7:00 and dresses himself. The day care provider gives him breakfast, and the two wait for the other children to arrive. The mother usually picks Cody up around 3:15. The court compared this scenario with one posed by the father, who works in a skilled position and begins work at 7:00 a.m. The court noted that the father and his girlfriend have found a day care provider near their home and places of employment. The court further found that attending day care while in the father's custody would have two advantages for Cody. He would be awakened and taken to day care a "full hour later each day." In addition, the work schedule of the father's girlfriend would allow her to stay home with Cody two days one week and three days the next week. Thus, if the father were awarded custody, Cody would spend five days, instead of ten, in day care.

In its conclusions, the court cited *deBeaumont v. Goodrich,* 162 Vt. 91, 101, 644 A.2d 843, 849 (1994), for the proposition that the weight to be accorded the primary-caregiver relationship must be based on the likely effect of a change of custodian on the child. "Only when

there is no evidence of that effect should the court ordinarily find that the child must remain with the primary caregiver if fit." *Id*; see also *Harris v. Harris*, 149 Vt. 410, 419, 546 A.2d 208, 214 (1988) (in absence of evidence of likely effect of change of custodian on child, ordinarily court should find that child should remain with primary custodian if fit). The court then concluded that there was no significant, direct opinion evidence presented regarding the likely effect on Cody of a change of custodian. It noted that it was "unable to find from the testimony that Cody will have one or another psychological manifestation were his physical custody to be changed." Nevertheless, the court awarded custody to the father primarily because, given the mother's work schedule, the child would have more total time with a parent and less time in day care if the father were awarded custody. The present appeal followed.

The court's decision cannot be reconciled with the principle in *deBeaumont*, which the court cited but did not follow. Nor can the court's decision be reconciled with its findings. The court found that the mother's role as caregiver "is certainly significant, given the child's young age," and that the quality of the child's relationship with the primary care provider "should be entitled to great weight unless the primary custodian is unfit." The court stated with respect to the changes that would occur if the father obtained custody that "[w]hile such change[s] certainly cannot be presumed to be a good thing, per se, we should also not presume them to be a substantial negative in the absence of evidence on the point." The court then concluded that "it does not take expert testimony to persuade us there is most probably a substantial bond between mother and son, stronger than that with father." Each of these additional conclusions either militated *against* a change in the custodial status quo, or at least failed to support it.

In addition, the court's analyses under the criteria set forth in 15 V.S.A. § 665(b) were not consistent with its decision. The court's findings under § 665(b)(1), regarding the relationship of the child with each parent and the ability and disposition of each parent to provide the child with love, affection, and guidance, were, at best, neutral. The only findings that appeared to bear directly on the relationship between the father and the child were limited. The court found that the father has performed the usual parental tasks, but not as frequently as the mother has. It also found that the father seems "alert to ordinary parenting responsibilities, and able to effectively discharge them."

The court's findings were also basically neutral as to provision of food, clothing, medical care, and other material needs (§ 665(b)(2)) and meeting future developmental needs (§ 665(b)(3)). As to § 665(b)(4), the quality of the child's adjustment to the child's present housing, school, and community, and the potential effect of any change, the court stated that "[t]here was no evidence suggesting other than normal adjustment to Cody's present housing, day care and extended family."

The court explained its rationale as focused on § 665(b)(6), the quality of the child's relationship with the primary care provider, if appropriate given the child's age and development, and § 665(b)(7), the relationship of the child with any other person who may significantly affect the child. The only specific explanation for the court's outcome, however, boiled down to a comparison of the parties' respective daily timetables. It noted that Cody and the mother share fewer than five hours per day when they can interact and that most of Cody's waking hours are spent with a day care provider. The court observed that the mother's time with Cody is further limited because Cody spends alternate weekends and one day each week with the father. It concluded that "[g]iven household chores, fatigue, other people in the household, Mom is in the unfortunate situation — not at all her fault — of having relatively little time for Cody." The court added that if the father obtained custody, as among the two parents and the day care provider, he and his girlfriend "would be spending the greatest amount of time with Cody."

The court's rationale predominantly rests on rudimentary hour-counting. Moreover, the decision focuses unduly on the economic status of the mother, who presently works in an unskilled position. "[I]n an era when over 50 percent of mothers and almost 80 percent of divorced mothers work, the courts must not presume that a working mother is a less satisfactory parent or less fully committed to the care of her child." *Burchard v. Garay*, 724 P.2d 486, 492 (Cal. 1986) (footnotes omitted); see also *Wellman v. Dutch*, 604 N.Y.S.2d 381, 383 (App. Div. 1993) (no evidence that mother's routine of transporting child early in morning to aunt's home for care while mother was working would have adverse effects on child's development, despite fact that husband's present spouse would be home all day), *appeal dismissed*, 610 N.Y.S.2d 155 (1994); *Linda R. v. Richard E.*, 561 N.Y.S.2d 29, 33 (App. Div. 1990) (custody-seeking mother who works outside home should not be penalized for her employment any more than should father); *Gerber v. Gerber*, 487 A.2d 413, 416 (Pa. Super. Ct.

1985) (parent's work schedule may not deprive that parent of custody if suitable arrangements are made for child's care in parent's absence).

The father also addresses the court's finding that there was no significant, direct opinion evidence presented on the question of any likely effect on Cody of a change of custodian by arguing that, in spite of that finding, the court's decision fell within its broad discretion. He argues that the judge's "'common sense, his experience in life, and the common experience of mankind'" suffice to inform that discretion. *Harris*, 149 Vt. at 416, 546 A.2d at 213 (quoting *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983)).

The father takes our holding in *Harris* out of context. The question in that case was whether expert testimony was needed or useful in informing the court about consideration of sexual conduct evidence. We did not imply in *Harris* that a judge's intuition is a fair substitute for evidence on the question of the impact of a custody change on a child. The argument is a tacit concession that the decision of the court is not supported by sufficient evidence.

*Reversed and remanded for entry of an order awarding custody to the mother and for a determination of appropriate noncustodial contact for the father and child support.*