[No. F040008. Fifth Dist. Jan. 30, 2003.]

In re the Marriage of BRYAN and SHANNAN LOYD.
BRYAN LOYD, Appellant, v.
SHANNAN LOYD, Respondent.

**COUNSEL**

Larry G. Wilson for Appellant.

Shannan Loyd, in pro. per., for Respondent.

## OPINION

**LEVY, J.**—Appellant, Bryan Loyd (Bryan[1]), appeals the trial court's order modifying the custody arrangement of his two children. After the proper motions were filed, the trial court modified the prior physical custody order and awarded primary physical custody to Shannan Loyd (Shannan). We find the trial court based its decision on an improper consideration, reverse the order, and remand the matter to the trial court for a new hearing.

### BACKGROUND

Bryan and Shannan were married and had two children, H.L., now age five, and T.L., now age four. On July 11, 2000, after four years of marriage, Bryan filed a petition for dissolution of marriage. According to Bryan he filed for dissolution due to Shannan's drinking problem. He claimed that after the birth of their youngest child, Shannan became depressed and began taking medication and drinking heavily. Shannan entered a rehabilitation program and remained there for a period of five and one-half months. Bryan began the dissolution proceedings while Shannan was attending the rehabilitation program. Simultaneous to the filing of the petition, Bryan also filed an order to show cause for child custody.

Shannan failed to appear at the order to show cause child custody hearing on August 8, 2000. The trial court awarded joint legal custody to both parents, with sole physical custody vested in Bryan. Shannan received no visitation with the children until both parties attended court ordered mediation or until further order of the court. The trial court subsequently entered a default against Shannan, and a judgment of dissolution was ordered on September 12, 2000. In the judgment, as in the temporary order, the court awarded both parties joint legal custody of the two children with Bryan awarded sole physical custody. The court further ordered Shannan would have no visitation with the minor children until both parties attended court ordered mediation or until further order of the court.

On January 10, 2001, Bryan filed a notice of motion for child support. Also on January 10, 2001, Shannan filed a motion for modification of child custody and visitation, requesting physical custody of the children and reasonable visitation. After a hearing on the motion on February 21, 2001, the trial court ordered physical custody to remain with Bryan and ordered alternating weekend and holiday visitation with Shannan.

On September 20, 2001, Shannan filed another motion to modify the custody order. According to her motion, Shannan claimed that due to

---

[1]First names are used for ease in identifying the parties; no disrespect is intended.

Bryan's work schedule, the minor children were spending many hours with third party caregivers, daycare providers and Bryan's parents, and that Shannan is a homemaker and could care for the children in her home during the day. After a hearing on the motion, the trial court ordered an investigation through the court mediation department on the issue of custody and visitation. As a result, an investigator's report was filed with the court and received into evidence.

According to the report, Bryan worked from 6:30 a.m. to 4:30 p.m. Monday through Saturday. The children attended daycare from 8:30 a.m. to 4:30 p.m. five days a week, and were transported to and from daycare by Bryan's parents. Bryan and the children were living with Bryan's parents, but Bryan was hopeful of finding his own residence within the following year. The report indicated that the children were in a positive and nurturing environment.

The report stated that Shannan had remarried and was a stay-at-home mother. Shannan's two children from a previous marriage resided with her, as did her newborn from her current marriage. Shannan informed the investigator that she began experiencing symptoms of depression after the birth of T.L. and, as a result, began taking medication and drinking heavily. She entered a rehabilitation center, remaining there for approximately four months. While she was in the recovery center, Bryan filed for dissolution. She claimed there was some confusion as to a court date, and as a result she did not appear at the hearing where Bryan was awarded sole physical custody of the children. Six months later, Shannan was awarded visitation with the children and has consistently exercised her right to visit with the children.

Shannan stated that she wanted physical custody of the children because she could be at home with them during the day and could provide for them emotionally and physically. Shannan informed the investigator that she had not ingested alcohol or medication since her discharge from the recovery center and had learned coping skills to support her recovery.

The investigator noted that both Bryan and Shannan were appropriate parents. The report explained that Bryan had done an "excellent job" in providing for his children and they were adequately cared for while he was at work. In addition, the children benefited from their relationship with their grandparents. Although Shannan's depression and alcohol abuse had a negative impact on her children in the past, Shannan appeared stable and competent at the time she was interviewed by the investigator. The investigator opined that the children would benefit from being in Shannan's care during

the week, noting that this arrangement would maximize the amount of quality time each parent would have with the children. Thus, the investigator concluded Shannan should receive primary physical custody of the children with liberal visitation to Bryan.

At a subsequent hearing on the motion, Bryan testified that he was currently working fewer hours in that he no longer worked on Saturdays. He acknowledged that Shannan had consistently exercised her visitation rights with the children and that the visits were successful. As to Shannan's recovery, Bryan stated that she was "kicked out" of the program for drinking, although she was subsequently readmitted. To Bryan's knowledge, Shannan was not currently involved in any 12-step recovery program.

Justin Krizo, the investigator who prepared the report, testified that to his knowledge Shannan was not participating in any 12-step recovery programs. He explained his recommendation regarding custody was based upon Shannan's increased stability. He explained Shannan was remarried, had a stable residence and had completed her recovery with no further use of alcohol or drugs. He did not believe that removing the children from their father's care would have an adverse impact upon them.

Shannan testified that she never relapsed while in the rehabilitation center. She noted that she was erroneously discharged from the center and was subsequently readmitted. She stated that she no longer used drugs or alcohol.

After hearing the evidence and considering the investigator's report, the trial court found Shannan had demonstrated a significant change in circumstances by establishing a period of stability. She had achieved a period of recovery and was able to provide for the children in her home. Due to the fact that Shannan was able to provide for the children at home while Bryan worked, the trial court determined that it would be in the children's best interests to reside with Shannan. Consequently, the trial court ordered the children be placed in joint legal and physical custody of both parents with Shannan having primary physical custody. Bryan was granted visitation with the children.

### DISCUSSION

In making an initial custody determination, the court must make an award that is in accordance with the best interests of the child. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237]; Fam. Code, § 3040.) ▮ Custody and visitation orders are reviewed for an abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th

249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289]; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911].) This standard of appellate review has been called "the deferential abuse of discretion test." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32.)

▄▄▄ The sole issue presented in this case is whether the trial court abused its discretion in modifying the custody order. Bryan argues that the trial court erred in finding that there had been a significant change of circumstances and that the court failed to give proper consideration to the children's need for continuity and stability.

After hearing the evidence presented at the hearing, the trial court ruled as follows:

"I do find that circumstances have—I might add that it's not a matter— and certainly Mr. Loyd deserves a lot of credit for being able to establish a place, the safety net as referred to by his counsel, but a place for his kids and a place that was certainly good for the kids, with the unfortunate circumstances that Ms. Taylor [Shannan] was then experiencing and my job is not really to decide if he should be punished for not doing a good enough job or rewarded for doing a good job, it's to decide what is in the best interest of the children, and I certainly can find no real fault with anything that he has done.

"On the other hand, the changed circumstances I believe are the establishment of a period of stability by Mrs. Taylor, her recovery and a lot of people in recovery do recover and then fall out of recovery and she's established a period of recovery which is quite an achievement. If it were the fact, and it isn't but if it were the fact that she was the working parent and would have the children in day care for fairly significant periods of day—times of the day and Mr. Loyd were the one who was at—was the one at home, I would probably be doing just the opposite but under the circumstances I think the parents [*sic*] should reside with the mother.

"It would be my intended decision that the minors be placed in joint legal and physical custody with the mother being the primary custodial parent."

It is clear from this ruling that the trial court based its decision upon the fact that Shannan was able to care for the children at home because she did

not work, whereas Bryan, who worked full time, was required to place the children in daycare. We find the trial court's reliance upon this consideration was improper and constituted an abuse of discretion. (*Burchard v. Garay*, *supra*, 42 Cal.3d at pp. 540-541.)

In *Burchard v. Garay*, *supra*, 42 Cal.3d 531, the California Supreme Court was confronted with a similar issue. There, the court was concerned with an initial award of custody of a minor child to his father. After "a brief liaison," the mother became pregnant with her son. (*Id.* at p. 533.) The father denied paternity and the mother cared for the child alone. Subsequently, the mother sought support from the father. The father requested visitation, but the mother refused and sought exclusive custody. The father responded by also seeking exclusive custody. (*Ibid.*) After hearing the matter, the trial court granted custody to the father, finding that: (1) the father was " 'better equipped economically' " to care for the child; (2) the father was remarried and thus the child could be cared for in the home, whereas the mother relied on child care while she worked; and (3) the father was more willing to provide the mother with visitation. (*Id.* at p. 534.)

In reviewing the decision, the California Supreme Court first pointed out that the trial court's reliance on the parties' relative economic positions was not a proper factor in deciding custody. (*Burchard v. Garay*, *supra*, 42 Cal.3d at p. 539.) The court further noted that the trial court's "reliance upon the asserted superiority of [the father's] child care arrangement suggests an insensitivity to the role of working parents." (*Id.* at p. 535.) In explaining the inappropriateness of the trial court's consideration of the daycare situation the court declared: "[I]n an era when over 50 percent of mothers and almost 80 percent of divorced mothers work, the courts must not presume that a working mother is a less satisfactory parent or less fully committed to the care of her child. A custody determination must be based upon a true assessment of the emotional bonds between parent and child, upon an inquiry into 'the heart of the parent-child relationship . . . the ethical, emotional, and intellectual guidance the parent gives to the child throughout his formative years, and often beyond.' (*In re Marriage of Carney* [(1979)] 24 Cal.3d 725, 739 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].) It must reflect also a factual determination of how best to provide continuity of attention, nurturing, and care. It cannot be based on an assumption, unsupported by scientific evidence, that a working mother cannot provide such care—an assumption particularly unfair when, as here, the mother has in fact been the primary caregiver." (*Id.* at p. 540, fns. omitted.)

The court went on to state that it would be proper for a court to consider any actual deficiency in care as a result of a parent's work or from another

cause, but such factors were not present in that case. (*Burchard v. Garay, supra,* 42 Cal.3d at p. 540.) Thus, the court concluded that the trial court did not base its decision on suitable factors. As a result, the court held the trial court abused its discretion in granting custody to the father and reversed the trial court's order. (*Id.* at p. 541.)

Other jurisdictions have come to similar conclusions. In *Linda R. v. Richard E.* (1990) 162 A.D.2d 48 [561 N.Y.S.2d 29], the New York Supreme Court, Appellate Division, explained that a parent who worked outside of the home should not be penalized for his or her employment. "To do so would often confront one parent . . . with a Hobson's choice between livelihood and parenthood, while exacting a lesser standard on the other parent." (*Id.* at p. 33.) The Supreme Court of Vermont noted a trial court's award of custody to a father was inappropriate where the rationale was based upon the fact that the child would have to spend less time in daycare with the father than with the mother. (*Brennan v. Brennan* (1996) 165 Vt. 525 [685 A.2d 1104, 1106].) Similarly, in *West v. West* (Alaska 2001) 21 P.3d 838, 842, the Supreme Court of Alaska held the trial court abused its discretion in awarding custody of a child to his father based upon the fact that the father would likely remarry and provide his child with a "two-parent household." The court explained that assuming a working parent cannot provide adequate care requires parents to choose between parenthood and livelihood. (*Ibid.*) Likewise, in *Gerber v. Gerber* (1985) 337 Pa.Super. 580 [487 A.2d 413, 416], the court noted that a parent may not be deprived of custody based upon his or her work schedule if adequate arrangements are made for the child's care in the parent's absence. We find the reasoning of these courts persuasive.

Much like the trial court in *Burchard*, the trial court in the present case based its decision upon the fact that Bryan would place his children in daycare while he worked. The trial court assumed, without any supporting evidence, that the mother could provide better care for the children because she was in the position of being able to remain in the home with the children during the day. The investigator's report, upon which the trial court heavily relied, opined that both parents were adequate providers, but that the "children should be in the care of a parent whenever possible." It is interesting to note that the investigator who made this recommendation also recommended that the parents consider allowing H.L. to continue his daycare arrangement, as it encompassed a preschool component. No specific evidence was presented at the hearing demonstrating that Bryan's work schedule had any negative impact on the best interests of the children.

In light of the trial court's reliance on an improper factor in considering the motion to modify custody, we hold the trial court abused its discretion.

Consequently, we will remand the cause to the trial court to reconsider the motion based on proper considerations.

As the Supreme Court observed in *Burchard*, we recognize the "anomalous position" of an appellate court in child custody appeals. (*Burchard v. Garay, supra*, 42 Cal.3d at p. 541.) Over a year has passed since the trial court awarded primary physical custody to Shannan. At the new hearing, the trial court must determine what arrangement is in the best interests of the children as of the date of that hearing. The effect of our decision is not to make a final determination of the custody of the children, but is to ensure that in deciding the issue of custody the court must base its decision upon proper considerations. We note that a change of custody was not the only relief requested in this case. Shannan, in the alternative, requested she be allowed to care for the children during the day, while Bryan was at work. While we express no opinion as to the propriety of granting a change of custody or allowing Shannan to act as the daycare provider for the children, we are confident the trial court will base its decision on the children's best interests.

## DISPOSITION

The trial court's order modifying custody is reversed and the matter is remanded for a new hearing. Costs on appeal are awarded to appellant (Bryan).

Vartabedian, Acting P. J., and Cornell, J., concurred.