2004 VT 117

**Denise E. LUCE v. Jeffrey E. CUSHING**

[868 A.2d 672]

No. 03-344

¶ 1. December 2, 2004. Father appeals from a family court judgment awarding mother sole parental rights and responsibilities for the parties' two minor children and granting father visitation. Father contends: (1) the court abused its discretion by awarding parental rights and responsibilities without making the requisite findings concerning the best interests of the children; (2) the court improperly refused to allow father to present evidence and cross-examine witnesses; and (3) the administrative judge erroneously denied father's motion to disqualify the trial judge. We affirm.

¶ 2. This case presents a long and tortured factual and procedural history. Events material to the resolution of the instant appeal may be summarized as follows. Although never married, the parties are the parents of two minor children, born in March 1996 and December 1997. Mother filed a parentage action in June 2000, seeking parental rights and responsibilities and child support. The following month, attorney Karen Shingler filed an appearance on behalf of father. Based on a personal friendship with attorney Shingler, Judge Levitt —

who had previously heard several relief-from-abuse motions filed by the parties — recused herself.

¶ 3. The parties eventually stipulated to a temporary shared custody arrangement, and agreed to postpone the parentage hearing while they continued to mediate the matter. In January 2001, however, mother filed a petition for relief from abuse, alleging that father had sexually abused the children. Following a hearing, the court found that father had inappropriately touched the private parts of one of the children, and granted a final relief-from-abuse order, awarding mother sole parental rights and responsibilities and limiting father's parent-child contact to supervised visitation. In March, attorney Karen Villemaire of Schoenberg & Associates entered an appearance on behalf of father, and the court granted attorney Shingler's motion to withdraw.

¶ 4. In late March, father filed a V.R.C.P. 60(b) motion for relief from the abuse-prevention order. At a hearing in May, the parties stipulated to an order in which father agreed to withdraw the Rule 60(b) motion, and the parties agreed that mother be awarded parental rights and responsibilities, that the parties submit to a forensic evaluation by Dr. Joseph E. Hasazi, and that "the award of parental rights and responsibilities to [mother] shall remain in effect unless Dr. Hasazi's report recommends that parental rights and responsibilities should switch to [father] or unless such report recommends that there be a significant change in the parental rights and responsibilities order," in which event the report would "be considered a material and unanticipated change in circumstances."

¶ 5. A docket entry in late October 2001 indicates that the family court clerk asked the current presiding judge, Judge Kupersmith, whether Judge Levitt could preside over the case in light of attorney Shingler's withdrawal. Judge Kupersmith directed the clerk to schedule a status conference with Judge Levitt to see if the parties objected. There is no indication in the record that the status conference took place. The record is clear, however, that Judge Levitt explained at the next scheduled hearing in November that, in light of attorney Shingler's withdrawal, "the reason that I wasn't on this case is no longer in effect" and thus there was "no reason that I couldn't handle the case as part of ... regular Family Court business." Neither party objected to Judge Levitt's participation at that time, or at any point during the numerous subsequent proceedings over which she presided until January 2003 — some fourteen months later — when father filed a motion to disqualify Judge Levitt. The basis of the motion and the administrative judge's ruling denying it will be discussed more fully below.

¶ 6. Dr. Hasazi filed his report with the court in April 2002. He did not conclude that father had sexually abused the children, but found rather that he had engaged in certain interactions with the children that were "developmentally inappropriate." Based on his review of the case history, testing, and interviews, Dr. Hasazi recommended that mother retain parental rights and responsibilities and that father have parent-child contact for three to five days during each two week period, transitioning from supervised to unsupervised overnight visits.

¶ 7. The court (Judge Levitt) presided over a three-day evidentiary hearing on the parentage action from March through May 2003. In light of the parties' earlier stipulation and Dr. Hasazi's recommendation that mother retain custody, the court ruled that the only salient issue was parent-child contact. The court denied father's several requests to introduce evidence allegedly showing that mother was unfit to serve as the custodial parent because she had coached the chil-

dren to make false accusations of abuse. The court also sustained objections to attempts to cross-examine mother on the same issue. The court issued a written decision in June. Its key findings, which father has not challenged on appeal, include findings that, while father enjoys a close and loving relationship with the children, he has difficulty acting as a parent, setting limits and putting the interests of the children ahead of his own. The court further found that the alleged inappropriate touching was not sexual in nature, but instead the result of father's lack of boundaries, and that father had benefitted from counseling in this regard.

¶ 8. The court also found that father had been hypercritical of mother's parenting skills and unduly obsessive about the children's care, resulting in mother's feelings of anger toward father and her efforts to thwart his contact with the children. The court found that mother is a good and adequate parent, provides the children with guidance, support and protection, and understands and meets their developmental, emotional, and physical needs. While mindful of mother's previously obstructionist actions toward father, the court found that the children's interests were best served by spending more time with mother than father. Accordingly, the court awarded mother parental rights and responsibilities, and ordered parent-child contact with father every other Wednesday afternoon through Monday morning, and alternating holidays. This appeal followed.

¶ 9. Father contends the court abused its discretion and abrogated its responsibility by basing the award of parental rights and responsibilities on the parties' stipulation and Dr. Hasazi's report, rather than on detailed findings concerning the best interests of the children under 15 V.S.A. § 665(b). Father's argument is essentially two-fold. First, he asserts that the stipulation and order were not intended to serve as a final determination of parental rights and responsibilities. As noted, the stipulation and order provided that the agreed upon award of parental rights and responsibilities to mother would "remain in effect" unless Dr. Hasazi recommended otherwise. Father observes that the order incorporating the stipulation specifically provided that mother "is awarded *temporary* rights and responsibilities." (Emphasis added.) The trial court acknowledged the temporary nature of the order pending the completion of Dr. Hasazi's evaluation, but also found that the parties plainly intended the award to become permanent and final absent a contrary recommendation by Dr. Hasazi. As the court succinctly explained, "it was a temporary award to become final if the Hasazi report suggested that [mother] should ... retain parental rights." The plain language of the stipulation and order amply supports the court's interpretation. See *Lussier v. Lussier*, 174 Vt. 454, 455, 807 A.2d 374, 376 (2002) (mem.) ("agreements must be interpreted according to the parties' intent as expressed in the writing").

¶ 10. Father's second argument is more compelling. He asserts that the court abrogated its judicial responsibility to determine the best interests of the children by effectively delegating that responsibility to the parties' chosen expert. In addressing the claim, we note that the order in question implicates two competing policies. On the one hand, the Legislature has expressly determined that an agreement between the parties on the issue of parental rights and responsibilities is presumptively in the best interests of the child. See 15 V.S.A. § 666(a) ("Any agreement between the parents which divides or shares parental rights and responsibilities shall be presumed to be in the best interests of the child."); see also *Harris v. Harris*, 149 Vt. 410, 420, 546 A.2d 208, 215 (1988) ("We have a strong policy in favor of vol-

untary settlement of contested custody matters."). We have held, in light of that policy, that such agreements cannot be "lightly overturned." *Damone v. Damone*, 172 Vt. 504, 511, 782 A.2d 1208, 1214 (2001). On the other hand, we have recognized that the parties cannot conclusively bind the trial court's custody decision when the facts and circumstances establish that their agreement is not in the best interests of the child or was not reached voluntarily. *Harris*, 149 Vt. at 420, 546 A.2d at 215. Together, these policies suggest that while the parties may agree to follow the custody recommendation of a jointly selected mental health expert, the court cannot be bound by that agreement or the by expert's recommendation when the evidence demonstrates that the best interests of the child requires a different result. See, e.g., *In re J.M.D.*, 857 P.2d 708, 712 (Mont. 1993) (noting that court "is free to consider the parties' stipulation" agreeing to base custody award on expert's recommendation but cautioning that court must exercise independent judgment regarding child's best interest); *P.T. v. M.S.*, 738 A.2d 385, 396 (N.J. Super. Ct. App. Div. 1999) ("Parties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child.").

¶ 11. Father asserts that the court improperly deferred to the stipulation in rejecting his efforts to introduce evidence allegedly showing that mother coached the children to charge father with sexual abuse. Although either party should generally be free to introduce evidence that a custody agreement is not in the child's best interests, we are persuaded — in light of the particular facts and circumstances presented — that no prejudicial error occurred in this case. Father's claim must be understood in context. The custody dispute with mother had begun several years prior to the parties' agreement, and had included charges of inappropriate sexual behavior, investigations

by the Department of Social and Rehabilitation Services, and several relief-from-abuse hearings.

¶ 12. To resolve the on-going conflict, the parties entered into the agreement to refer the matter to Dr. Hasazi. Indeed, the court found that father's claim of improper coaching by mother was one of the principal issues that impelled the parties to refer the matter to Dr. Hasazi for resolution. Dr. Hasazi was well aware of the issue, testifying that "in light of the allegations and cross-allegations, [I] tried to investigate the coaching issue as much as I did the child sexual abuse issue." In this regard, Dr. Hasazi testified, and his report indicated, that he conducted extensive interviews with family members, friends, and physicians, administered psychological tests, reviewed all of the previous motions and orders in the case, and read the SRS investigative files and reports, among other materials. These included an "assessment of written materials" prepared by Dr. William Nash, a psychologist that father had engaged to critique the SRS investigation. Dr. Nash's report concluded that statements by one of the children in one of the interviews had been "influenced" by a variety of sources and that he had received "specific coaching" relating to "superior injunctives concerning touching of his genital areas."

¶ 13. Dr. Hasazi's ultimate conclusion in this regard was not that father had sexually abused his children, but that he had failed to understand and observe appropriate developmental boundaries. He also testified that he had reviewed Dr. Nash's assessment of the SRS investigation, as well as a second evaluation conducted for father by Dr. John Donnelly, and did not find any support for father's assertion that mother had coached the children to fabricate allegations of sexual abuse.

¶ 14. It was against this factual backdrop that the court considered father's

request at the final hearing to introduce several pieces of allegedly new evidence that mother had coached the children. Father's proffer referred to the Nash and Donnelly reports, a pediatrician's report finding no observed evidence of sexual abuse in either child, and the affidavit of a licensed mental health counselor, Aida Reed, stating that she had reviewed the SRS interviews and concluded that the mother's allegations were "highly suspect" and that one of the children had been "highly influence[d]." The court denied the request, observing that the parties had agreed to refer the coaching issue, among others, to Dr. Hasazi, and that the proffered materials were not significantly different in kind from earlier adduced evidence; they buttressed father's claim, and the Nash report's conclusion, that the SRS interviews had been poorly conducted and that the children had likely been influenced by outside sources.

¶ 15. Although a close question, we cannot conclude that the court's decision to exclude the proffered evidence was a clear and prejudicial abuse of discretion. While the court may have relied too heavily on the parties' agreement as a basis for exclusion, it was correct in observing that the proffered material added little to the Nash report, whose critique of the SRS interviews and conclusion that the children's statements had been influenced by outside sources were already familiar to the court. The additional materials were consistent with the Nash report, but also stop short of asserting that mother had coached the children to fabricate charges of sexual abuse. Furthermore, the court expressly found that father had not sexually abused the children, that he had failed, at most, to observe developmentally appropriate boundaries, and that he had profited from parenting classes and counseling — findings that father has not challenged on appeal. Thus, we are persuaded that even

if the additional materials in question had been admitted, they would not have affected the award of parental rights and responsibilities to mother. See *Greene v. Bell*, 171 Vt. 280, 288, 762 A.2d 865, 873 (2000) (any error in exclusion of evidence is ground for reversal only if it resulted in prejudice affecting a substantial right of the party).

¶ 16. Finally, father contends the administrative judge abused his discretion in denying father's motion to disqualify Judge Levitt. His argument is two-fold. First, he relies on a Florida rule that categorically precludes a judge from reasserting judicial authority over a case once a recusal order has been entered. See *Margulies v. Margulies*, 528 So. 2d 957, 960 (Fla. Dist. Ct. App. 1988) ("[O]nce a trial judge disqualifies himself, he may not 'requalify' himself on removal of the reason for disqualification."). No other jurisdiction appears to have adopted such a categorical rule, or the variation suggested by father requiring an express waiver of any objection by the parties. On the contrary, the majority of jurisdictions that have addressed the issue hold that a judge may rescind a recusal where valid grounds appear on the record. See *Morrison v. District of Columbia Bd. of Zoning Adjustment*, 422 A.2d 347, 350 (D.C. 1980) (rule that change of circumstances may be grounds for court to revoke recusal "represents the majority position among courts which have considered the issue"); *Matthews v. State*, 854 S.W.2d 339, 341-42 (Ark. 1993) (judge who recused himself from pretrial motion based on landlord-tenant relationship with counsel could preside at trial because relationship had ended); *Flannery v. Flannery*, 452 P.2d 846, 849 (Kan. 1969) (judge may reassume jurisdiction over case where "the reason for his prior disqualification had been resolved"); *Dotson v. Burchett*, 190 S.W.2d 697, 699 (Ky. 1945) (court may reenter case where earlier decision to step aside was based on

erroneous assumption of fact or "some condition which passes away"); *In re Odineal*, 368 N.W.2d 800, 804 (Neb. 1985) ("When the cause for [the court's] disqualification in the first instance has been removed, a judge may assume supervision and jurisdiction in the case.").

¶ 17. Along with the majority of jurisdictions, we discern no need to adopt a special rule or procedure in cases, such as this, where a judge reenters a case based on his or her determination that the basis for an earlier recusal has been removed, and thereupon apprises the parties of the reasons for the decision. Here, it is undisputed that Judge Levitt recused herself solely on the basis of her friendship with father's attorney, Karen Shingler, and reentered the case only after attorney Shingler's withdrawal. The record also reveals that Judge Levitt explained the reason for her decision at the first hearing following her reassumption of authority, and that neither party registered any objection. Accordingly, we discern no basis to disturb the administrative judge's denial of the disqualification motion on this basis.

¶ 18. Apart from the trial court's reentry into the case, father also contends the motion for disqualification should have been granted on the ground that Judge Levitt "took numerous actions" that demonstrated bias or prejudice. The determining standard for disqualification is whether "the judge's impartiality might reasonably be questioned," A.O. 10, Vt. Code of Judicial Conduct, Canon 3.E(1), and in resolving that issue the judge is "accorded a presumption of honesty and integrity, with [the] burden on the moving party to show otherwise in the circumstances of the case." *Ball v. Melsur Corp.*, 161 Vt. 35, 39, 633 A.2d 705, 709 (1993) (quotation omitted). We review the administrative judge's decision for abuse of discretion, and will reverse only if the record reveals no reasonable basis for the ruling. *State v. Lin-*

*coln*, 165 Vt. 570, 571, 680 A.2d 110, 112 (1996) (mem.).

¶ 19. Father's assertion of judicial bias rests on several claims. First, he cites a colloquy between Judge Levitt and father's attorney, Ben King of Schoenberg & Associates, at the child-support hearing in November 2001. Judge Kupersmith had denied the firm's earlier motion to withdraw premised on father's nonpayment of attorney's fees, and Judge Levitt indicated at the November hearing that she might reconsider the motion, explaining that she did not believe the firm should be compelled to proceed pro bono and counseling father that he should either pay for an attorney or find one to represent him free of charge. The firm renewed its motion several days later, and the court granted the motion.

¶ 20. Father contends the court's statements interfered with his attorney-client relationship by causing the firm's withdrawal. The record discloses, however, that father filed a memorandum in support of the firm's withdrawal, citing ongoing conflicts over nonpayment of fees and "irreconcilable differences between counsel and myself," and arguing that the firm's continued representation "would be an impingement upon due process [and] the best interest of [the] minor children." Accordingly, the record does not support father's claim that the court's remarks caused the loss of counsel or unduly interfered with the attorney-client relationship.

¶ 21. Father next contends that, notwithstanding attorney Shingler's withdrawal, Judge Levitt's impartiality remained at issue because the withdrawal had resulted from a fee dispute. Father's only evidentiary support for the claim is attorney Shingler's deposition testimony that she had once mentioned the fee dispute while having lunch with Judge Levitt. Apart from the bare assertion of bias, the record contains no evidence that

Judge. Levitt was predisposed against father because of a past fee dispute, and there was no evidence that the dispute continued after attorney Shingler's withdrawal. No appearance or "per se lack of impartiality" arises from father's allegation, which is insufficient to overcome the presumption of judicial honesty and integrity. *Ball*, 161·Vt. at 39, 633 A.2d at 709.

¶ 22. Father additionally asserts that a lack of impartiality may be inferred from Judge Levitt's alleged failure to rule promptly on his motions to enforce a telephone parent-contact order, and from comments by the court at the motion hearing. The docket entries suggest that the delay between father's motions in July and September 2002, and the hearing in November, were due at least in part to difficulties in acquiring parent coordinators to facilitate contact, and to Judge Levitt's inability to attend a scheduled October hearing because she had to be in district court. The record thus does not support an inference of bias from the delay in hearing the motion sufficient to overcome the presumption of judicial impartiality. *Ball*, 161 Vt. at 39, 633 A.2d at 709; see also *Cliche v. Fair*, 145 Vt. 258, 262, 487 A.2d 145, 148 (1984) (prejudice on the part of the court must be affirmatively and clearly shown).

¶ 23. Finally, father cites the court's response to an argument by father's counsel that the children's allegations of inappropriate touching had been fabricated by mother. The court explained that it did not consider the argument to be relevant to the enforcement proceeding, that it was concerned rather with father's emotional stability and its impact on the children during the parent-contact sessions. As we have·observed, to establish prejudice "it is not enough merely to show the existence of adverse rulings, no matter how erroneous or numerous, or that the judge expressed a comment or opinion, uttered in the course of judicial

duty, based upon evidence in the case." *Gallipo v. City of Rutland*, 163 Vt. 83, 96, 656 A.2d 635, 644 (1994). The court's remarks in this case fall well short of the clear and affirmative showing required to raise a reasonable doubt about the court's impartiality. Accordingly, we discern no basis to disturb the administrative judge's decision.

*Affirmed.*